NOTICE

Decision filed 1/12/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-04-0433

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) St. Clair County. |
| | ) |
| v. | ) No. 91-CF-60 |
| | ) |
| DARRELL BROCKMAN, JR., | ) Honorable |
| | ) Richard A. Aguirre, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Darrell Brockman, Jr., appeals from an order of the circuit court of St. Clair County summarily dismissing his fourth postconviction petition. The issue raised in this appeal is whether the trial court erred in summarily dismissing defendant's fourth postconviction petition. We affirm.

BACKGROUND

Following a jury trial in 1991, defendant was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18-2(a)), armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A-2), and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12-4(a)) and was sentenced to serve consecutive 30-year prison terms on the armed violence and armed robbery convictions. No judgment was entered on the aggravated battery verdict because it was found to be a lesser-included offense of armed violence.

Prior to the trial, defendant sent the originally assigned trial judge a letter in

1

which he alleged his innocence. He stated that he did not understand why the victim was accusing him of committing the crime while, on other occasions, the victim specifically stated that several individuals had been involved in the crime. Attached to the letter was a copy of a confidential medical report from St. Elizabeth's Hospital, where the victim received treatment for his wounds. This report states that the victim had been transferred from St. Mary's Hospital. The report states, "[The victim] states that while in the office building at his place of work in East St. Louis *** he was jumped by several people and he feels that there was an attempt to rob him." Defendant now claims in this appeal that the report is newly discovered evidence.

On the day the jury trial was scheduled to begin, the assistant public defender assigned to the case filed a motion to withdraw. The assistant public defender explained that he and defendant were at an impasse where defendant was no longer speaking to him. Due to the impasse, he believed he could not provide defendant with effective representation, and he asked that he be allowed to withdraw. Upon questioning by the trial court, defendant agreed he was not satisfied with the assistant public defender; however, he advised he did not have the money to hire private counsel. Defendant stated that he wanted an attorney who would get things done, such as talking to the necessary witnesses.

The assistant State's Attorney handling the case objected to the motion to withdraw on the basis that defendant had ample opportunities prior to the day of the trial to realize there was a problem with his public defender. The public defender then reiterated his belief that if he were to proceed as defendant's counsel, defendant would not receive adequate representation. The trial court stated there was no indication defendant would cooperate with another assistant public defender, but nevertheless, it asked defendant if he would accept a substitute public defender.

2

Defendant said he would accept a substitute. The assistant State's Attorney then interjected that it would set a bad precedent to allow defendant to come in on the day of a trial and request a different attorney. Without further discussion concerning the specific complaints about the assistant public defender, the trial court denied the motion to withdraw. Defendant proceeded *pro se*, with the same assistant public defender who had filed the motion to withdraw acting as a consultant.

After jury selection and opening statements, the State requested an in-chambers hearing to object to the use of an alibi defense because that defense had not been certified prior to the trial. Defendant explained he had given his lawyer the names of several alibi witnesses prior to the trial. The assistant public defender agreed that defendant had given him the names of alibi witnesses, only two of which he interviewed. For unspecified ethical reasons, the public defender decided not to use either witness. The public defender did not talk to Larry Parker or Stanley Ray, both of whom defendant claimed could be alibi witnesses. The public defender also agreed he had not told defendant that an alibi defense needed to be certified prior to the start of the trial. The State complained it could not respond to an alibi defense because the only information supplied by defendant was that the witnesses stayed on 57th Street or 58th Street. Ultimately, the trial court ruled defendant could testify to his alibi defense, subject to hearsay objections, but could not present alibi witnesses because he had not provided "sufficient information to allow the State to investigate."

The alleged victim testified he renovates existing homes in East St. Louis through his position as the president of the East St. Louis Development Corp. At that time, he was married with two children and lived in Smithton. On the morning of December 26, 1990, the victim and Father Stallings met with defendant in his office,

3

regarding trash removal from a house. The victim said he gave defendant $50 to haul the trash to the dump. They were scheduled to meet later in the afternoon to discuss additional work. Defendant did not appear at the scheduled time and place, but he returned to the victim's office about 2 p.m. and asked for more money. The victim refused to give defendant more money because defendant did not do the original work and did not have a receipt from the dump showing he had used the $50 to pay the dumping fee. The two argued briefly, and defendant left. A few minutes later, two men whom defendant did not know came into the victim's office and asked why the victim had not paid defendant. The victim explained the situation, and the two men left.

The victim was getting ready to leave for the day at about 3:50 p.m., when he discovered his car had a flat tire. After he changed the tire, defendant appeared and asked for a ride home. The victim agreed, and the two left together. While en route, defendant changed his mind and asked for a ride to his girlfriend's house. When they arrived, defendant told the victim to look to his left. As he did so, defendant stabbed the victim on the right side of his neck with a knife with a four- to six-inch blade. Defendant stabbed the victim a second time, leaving a gash on his forehead. They struggled over the knife. The victim was able to open the door, and he ran down the street. He went to a house and banged on the door, calling for help. Defendant followed the victim, and the two struggled again. The victim was stabbed in the forearm. The victim threw his wallet so that defendant would have to leave him to retrieve it. Defendant picked up the wallet and attempted to leave by going through the backyard. A resident of the home came out and told defendant he could not exit that way, so defendant took the opposite route and apparently left in the victim's car.

4

The victim was hospitalized for five days. He identified defendant in a lineup two weeks later. The victim's wallet was found in the car, which was recovered about a week after the incident. The wallet was missing an Amoco credit card and $3. Amoco receipts were introduced into evidence. The parties stipulated that the signatures on the receipts had been compared with exemplars of defendant's handwriting. Experts found general similarities between defendant's signature and the signatures on the receipts but were unable to positively conclude that defendant had signed the receipts.

Reginald Loveless and his son, residents of the house where defendant and the victim allegedly struggled, testified for the State. Both corroborated that they had witnessed a struggle between a black man and a white man, but neither could identify defendant as the perpetrator.

Defendant testified in narrative form that he was 41 years old. He agreed he had met with the victim on the morning in question, but he gave a different version of events. According to defendant, the victim gave him $70. Some of the money was to be used for the dumping fee and gasoline, but $20 was to be used to procure a prostitute for the victim. Defendant said the victim had asked him to arrange for a prostitute for him once before but that meeting never took place. According to defendant, he made arrangements for men like the victim who wanted "something different" sexually. Defendant said he gave the victim a receipt for $40 for the dumping fee, but he agreed that there had been a dispute about the condition of the house to be cleaned. Defendant also agreed he had left with the victim that day, but he said the victim had dropped him off at 57th Street where a prostitute was waiting as arranged. The victim left with the prostitute. Defendant did not know what happened to the victim but speculated the victim held him responsible for his ordeal

5

because he had made the arrangements.

On rebuttal, the victim denied defendant had ever arranged for him to meet with a prostitute. He also denied defendant's allegations about what had occurred on December 26, 1990.

Dr. Jerome, who treated the victim at St. Elizabeth's Hospital, testified about the victim's injuries and explained the discrepancy between the victim's testimony at the trial and the confidential medical report prepared by him. The report states the victim had been beaten and robbed by a group of people at the victim's office in East St. Louis. Dr. Jerome explained that St. Mary's Hospital called to see if St. Elizabeth's Hospital would accept a transfer patient, and the caller gave a history of a robbery at the victim's office by a group of individuals. According to Dr. Jerome, the victim was unable to talk when he was admitted to St. Elizabeth's Hospital, so Dr. Jerome did not have an opportunity to verify what the caller from St. Mary's Hospital had initially reported.

During deliberations, the jury sent a note to the court and sought to review the testimony of Reginald Loveless. The trial court denied the request. The jury ultimately convicted defendant. Defendant was sentenced as previously set forth.

Defendant's convictions and sentences were affirmed on direct appeal. *People v. Brockman*, 260 Ill. App. 3d 1, 632 N.E.2d 615 (1994). Three issues were addressed in that appeal: (1) whether defendant was denied a fair trial because (a) defendant did not voluntarily waive his right to counsel, (b) the trial court failed to rule on the merits of defendant's claim that his counsel was ineffective, and the court refused to consider appointing new counsel, (c) trial counsel was ineffective due to his failure to interview two alibi witnesses and his failure to certify that defendant planned to present an alibi defense at the trial, and (d) the trial court forced

6

defendant to proceed *pro se* with the use of standby counsel immediately following the denial of defendant's motion to dismiss, without giving defendant the opportunity to prepare his defense; (2) whether the trial court erred in failing to instruct the jury on the limited use to be made of defendant's prior convictions for forgery and robbery; and (3) whether defendant was denied his right to have his interests represented when the court communicated with the jury about the case, where neither defendant nor standby counsel had been consulted about the note from the deliberating jury to the trial court before the trial court answered the jury's inquiry.

On June 29, 1994, defendant filed his first postconviction petition. Counsel was appointed. An amended petition was filed on August 18, 1995. The petition alleged defendant's trial counsel was ineffective, the jury had been improperly selected, and the trial court had deprived defendant of the opportunity to prepare a defense. On February 7, 1996, the petition was denied in part and dismissed in part after an evidentiary hearing. On appeal from that order, this court affirmed the judgment of the circuit court. *People v. Brockman*, No. 5-96-0184 (1997) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)).

On January 2, 1997, defendant filed a motion to reduce his sentences. The State filed a motion to dismiss. On March 12, 1997, the circuit court found that it did not have jurisdiction to consider the motion because it was filed several years after defendant had been sentenced.

On March 21, 1997, defendant filed a *pro se* petition for a writ of *habeas corpus*. Counsel was appointed, and an amended petition was filed on December 1, 1997. The petition raised the following arguments: (1) the sentences imposed were disproportionate, (2) the trial court erred when it imposed sentences on both the armed robbery conviction and the armed violence conviction because armed

7

violence is a lesser-included offense of armed robbery, (3) the panel that affirmed defendant's convictions on appeal had been improperly impaneled, and (4) the Illinois Supreme Court that denied defendant's petition for leave to appeal had been improperly impaneled. On March 23, 1998, defendant filed another amended petition, which realleged the above issues and asked for defendant's immediate release.

On November 23, 1998, a hearing was held, after which the amended petition for a writ of *habeas corpus* was dismissed. The circuit court noted that if the petition was considered a postconviction petition, the allegations would be barred under the doctrines of *res judicata* and waiver. This court affirmed the circuit court's judgment. *People v. Brockman*, 309 Ill. App. 3d 1099, 764 N.E.2d 611 (2000) (unpublished order pursuant to Rule 23).

On August 19, 2002, defendant filed a petition for relief from the judgment. The petition alleged a violation of defendant's right to counsel and a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). On October 2, 2002, the State filed a motion to dismiss. On October 17, 2002, defendant filed an amendment to the petition for relief from the judgment and raised a new allegation that he had never been given a physical or mental evaluation to determine whether he had medical problems and that he had been taking psychotropic drugs.

On January 15, 2003, the circuit court dismissed the petition, finding, *inter alia*, that the petition was untimely, defendant did not allege that any factors for tolling the limitations period existed, and defendant did not contend the judgment was void. The circuit court also found that the issue of whether defendant had been unconstitutionally deprived of his right to counsel was *res judicata* because that

8

issue had been previously decided against defendant both in his direct appeal and on the appeal from the denial of his first postconviction petition.  The circuit court also found that the issue of whether defendant had been under the influence of psychotropic medication was waived because defendant never requested an examination and that, even if it was not waived, the record did not indicate defendant had been under the influence of psychotropic medication.  The court noted that if defendant's pleading was considered a postconviction petition, the issue pertaining to psychotropic drugs was statutory and not constitutional and, therefore, the issue could not be raised.

On April 23, 2004, defendant filed the instant postconviction petition *pro se.* In the petition, defendant alleged a discovery violation in that the State had failed to disclose the victim's statement made at the hospital after the alleged attack and that the statement differed substantially from his testimony at the trial.  Defendant's petition alleges as follows:

"The main reason for this petition is that I am suppose[d] to have robbed [the victim] on 72nd Street in East St. Louis.  Now I am receiving this other statement saying that [the victim] was robbed at his place of business which is on 38th Street by several individuals, which was never brought up in court, so wwhy [*sic*] wasn't this brought up in court and shown that there was [*sic*] other individuals?  How can a person be robbed in two different places at the same time 40 blocks away from each other.  Why did the [S]tate [*sic*] [A]ttorney with hold [*sic*] this information?  This would have shown some credibility as to who was telling the truth.  After all these years, this document shows up, in which I was very shocked and upset when I got it.  The [S]tate [*sic*] [A]ttorney just completely lied to the jury about everything and the courts keep saying

9

something other than what the court transcripts say. This wrong must be reversed because the jury didn't get all the true facts as to statements made and that others were involved, but I'm suppose[d] to be the only one chasing [the victim], jumping over fences and such[,] and I can barely walk because of surgery's [*sic*] I've had and a very bad heart. There was no way that I could have done this crime."

On June 8, 2004, the trial court issued an order dismissing the "successive" petition on the basis that it was not in compliance with subsection (f) of section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2004)). Defendant now appeals.

## ANALYSIS

The issue we are asked to address is whether the trial court erred in summarily dismissing defendant's fourth postconviction petition. Defendant argues that his postconviction petition presented sufficient facts to satisfy the cause-and-prejudice test for successive petitions and that, therefore, the trial court erred in summarily dismissing his petition. The State replies the trial court did not err in dismissing defendant's successive postconviction petition. The State insists that the plain language of the statute first requires a defendant to obtain leave of the court before filing a successive petition and that because defendant failed to obtain leave of the court, that was reason enough for the trial court to summarily dismiss defendant's successive petition.

A dismissal of a postconviction petition without an evidentiary hearing before the trial court is reviewed *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 389, 701 N.E.2d 1063, 1075 (1998). A reviewing court has the same capability as the trial court in the first instance to look at the allegations contained in the petition and

10

construe them liberally in favor of a petitioner as set forth in light of the trial record. Accordingly, there is no need to give deference to a trial court's conclusions on the sufficiency of a petitioner's allegations. *Coleman*, 183 Ill. 2d at 388-89, 701 N.E.2d at 1075.

The obstacles that stand in the way of filing successive postconviction petitions are difficult to overcome. Pursuant to section 122-3 of the Act, "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2004). Furthermore, a ruling on an initial postconviction petition has the effect of *res judicata* with respect to all the claims that were raised or could have been raised in the initial petition. *People v. Flores*, 153 Ill. 2d 264, 274, 606 N.E.2d 1078, 1083 (1992). However, the waiver language contained in section 122-3 is not an ironclad bar to the filing of multiple or successive petitions. Such petitions have been allowed despite the lack of statutory authority for those filings when fundamental fairness requires that an exception be made to the waiver language contained in section 122-3 of the Act. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459, 793 N.E.2d 609, 621 (2002).

*Pitsonbarger* adopted the cause-and-prejudice test as the analytical tool for determining whether fundamental fairness allows for a relaxation of the waiver rule contained in section 122-3 of the Act. *Pitsonbarger*, 205 Ill. 2d at 459, 793 N.E.2d at 621. The cause-and-prejudice test adopted by the supreme court in *Pitsonbarger* is codified in subsection (f) of section 122-1 of the Act. Subsection (f), which was added on January 1, 2004, states:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial

11

post[]conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post[]conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post[]conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2004). The instant case asks us to address the meaning of subsection (f).

We note that in construing a statute, our primary objective is to give effect to the intention of the General Assembly. *People v. Greer*, 212 Ill. 2d 192, 208, 817 N.E.2d 511, 521 (2004). If this court can ascertain the legislature's intent from the plain language of the statute, that intent must prevail. *People v. Boclair*, 202 Ill. 2d 89, 100, 789 N.E.2d 734, 741 (2002). To ascertain legislative intent, we may properly consider not only the language in the statute but also the purpose and the necessity for the law, the evils sought to be remedied, and the goals to be achieved. *People v. Botruff*, 212 Ill. 2d 166, 175, 817 N.E.2d 463, 468 (2004).

The trial court did not dismiss defendant's successive postconviction petition on the grounds that it was frivolous or patently without merit. Instead, the trial court's reason for summarily dismissing defendant's petition was that defendant failed to comply with subsection (f) of section 122-1 of the Act. The trial court did not specify if the petition failed to comply with a part or all of subsection (f). The order does not specify whether defendant's successive petition was dismissed because defendant had failed to obtain leave of the court before filing his petition or because the trial court did not believe that the allegations contained in defendant's petition required a relaxation of the waiver rule.

12

The first sentence of this statute states, "Only one petition may be filed by a petitioner under this Article *without leave of the court.*"  (Emphasis added.)  725 ILCS 5/122-1(f) (West 2004).  It goes on to adopt the cause-and-prejudice test as the analytical tool for determining whether a successive petition may be filed. Subsection (f) was clearly intended by the General Assembly to codify the cause-and-prejudice test adopted by the supreme court in *Pitsonbarger*.  The statute does not specifically state that a defendant must obtain leave of the court *before* filing a successive petition, but that is the implication of the statute.  The Act contemplates the filing of only one postconviction petition, and the General Assembly's purpose in enacting this statute was an attempt to limit a defendant from filing frivolous petitions.  Accordingly, we find the trial court could have properly dismissed defendant's successive postconviction petition on the basis that defendant had failed to obtain leave of the court before filing the petition.

Even assuming, *arguendo*, that a defendant need not obtain leave of the court prior to filing a successive petition, the trial court did not err in summarily dismissing the petition, because defendant failed to meet the cause-and-prejudice standard set forth in the statute.  According to subsection (f), in order for a successive postconviction petition to be considered on the merits, a defendant must show good cause for failing to raise the claimed error in a prior proceeding and must show that actual prejudice resulted from that error.  "Cause" is an objective factor external to the defense that impeded a defendant or his counsel from raising the claim in an earlier proceeding.  *Pitsonbarger*, 205 Ill. 2d at 460, 793 N.E.2d at 621.  "Prejudice" exists where the defendant can show that the claimed constitutional error so infected his trial that the resulting conviction violated due process.  *People v. Tenner*, 206 Ill. 2d 381, 393, 794 N.E.2d 238, 246 (2002).

13

The conviction of an innocent person violates the due process clause of the Illinois Constitution. The Illinois Supreme Court has, therefore, recognized the right of a postconviction petitioner to assert a claim of actual innocence based upon newly discovered evidence. *People v. Washington*, 171 Ill. 2d 475, 489, 665 N.E.2d 1330, 1336 (1996). To win relief under this theory, the evidence adduced by the defendant must be "newly discovered," which means it must be evidence that was not available at the defendant's original trial and could not have been discovered by the defendant sooner through diligence. In addition, it must be of such a conclusive character that it would probably change the result at a retrial. *People v. Barrow*, 195 Ill. 2d 506, 540-41, 749 N.E.2d 892, 913 (2001).

In the case before us, defendant claims actual innocence based upon a newly discovered statement made by the victim at the hospital. According to the statement, the victim alleged that his injuries occurred at his office, where he was attacked by several people. In his petition, defendant alleges that this statement, which differs substantially from the victim's testimony at the trial, shows that the victim lacked credibility and makes the victim's testimony more plausible. The State replies the record contradicts defendant's claim that he did not know about this statement, which was contained in the victim's medical records.

While we are aware that at this stage of the proceedings defendant's allegations as set forth in the postconviction petition must be construed liberally in his favor and that all well-pleaded facts are to be taken as true (*People v. Caballero*, 126 Ill. 2d 248, 259, 533 N.E.2d 1089, 1091 (1989)), we cannot ignore the record in the instant case, which refutes defendant's allegations that he was unaware of the statement. Defendant's case proceeded to a trial on June 27, 1991. On April 21, 1991, defendant wrote the trial judge a letter in which he complained about the

14

victim's statements. Defendant's letter stated, "I just can't understand why [the victim] says its [*sic*] me and on his other statements there were several individuals and it was done at two locations and even he states that there was an attempt to rob him, so where did I rob him." Included with the letter was a copy of the confidential medical report prepared by the treating physician, Dr. Jerome, in which he outlines the victim's version of events. The same copy of the medical record is attached to the petition here in question. Someone wrote on the copy attached to the petition, "Just received this[;] didn't know anything about it." However, the record clearly shows that defendant, who represented himself at the trial, possessed the medical record prior to the trial and was aware of the discrepancy in the number of attackers and the location of the attack.

Moreover, Dr. Jerome explained the discrepancy between the victim's testimony at the trial about how his injuries occurred and the version of events written in the medical record. Dr. Jerome testified he had received a call from an employee at St. Mary's Hospital describing a patient with a neck wound. The caller, not the victim, told Dr. Jerome that the victim had been jumped by someone, or a group of people, who attempted to rob him. The caller asked Dr. Jerome to accept the patient at St. Elizabeth's Hospital. Dr. Jerome further testified that when the victim first arrived at St. Elizabeth's Hospital, he was unable to talk and that, thus, the accuracy of the initial report about how the injury occurred could not be checked. Dr. Jerome explained he was not concerned with the accuracy of the initial report but was instead focused on treating the victim's injuries.

The confidential medical record here in issue was a part of the record during defendant's trial. Because the medical record has been a part of the record since 1991, defendant's previous postconviction counsel had access to it. Thus,

15

defendant has failed to show an objective factor that impeded his ability to raise the instant claim during his initial postconviction proceedings. Likewise, defendant has failed to show prejudice because the jury was aware of the discrepancy at defendant's trial.

Under these circumstances, defendant failed to meet the cause-and-prejudice test contained in subsection (f). The issue raised by defendant in his petition, an alleged State discovery violation, warrants no further consideration on the merits. Accordingly, the trial court did not err in summarily dismissing defendant's fourth postconviction petition.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.


Affirmed.


HOPKINS and WELCH, JJ., concur.

16

NO. 5-04-0433

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
) Circuit Court of
    Plaintiff-Appellee, ) St. Clair County.
)
v. ) No. 91-CF-60
)
DARRELL BROCKMAN, JR., ) Honorable
) Richard A. Aguirre,
    Defendant-Appellant. ) Judge, presiding.

_____

**Opinion Filed**:                    January 12, 2006

_____

**Justices**:          Honorable Richard P. Goldenhersh, J.

                  Honorable Terrence J. Hopkins, J., and
                  Honorable Thomas M. Welch, J.,
                  Concur

_____

**Attorneys**
**for**
**Appellant**

Daniel M. Kirwan, Deputy Defender, Lawrence J. O'Neill, Assistant Defender, Office of the State Appellate Defender, Fifth Judicial District, 730 E. Illinois Highway 15, Suite #1, Mt. Vernon, IL 62864

_____

**Attorneys**
**for**
**Appellee**

Hon. Robert Haida, State's Attorney, St. Clair County, 10 Public Square, Belleville, IL 62220; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Rebecca E. McCormick, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____