FIRST DIVISION

No. 1-06-1314

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 92 CR 21083 |
| | ) | |
| SALVADOR ORTIZ, | ) | Honorable |
| | ) | Dennis Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Salvador Ortiz appeals the denial of his third postconviction petition. We reverse the ruling of the trial court and remand for new trial. In February 1994, following a bench trial, defendant was found guilty of first degree murder and sentenced to 47 years in prison. Defendant's conviction and sentence were affirmed on direct appeal.

BACKGROUND

The defendant was convicted of the murder of Francisco Ramos (victim), who was shot and killed near Gill Park on Sheridan Road in Chicago on June 28, 1992.

Christopher Estavia testified for the State that he drove his friend, the defendant, one of the leaders of the Latin Eagles, to Gill Park. Estavia testified that he has never been a member of

the Latin Eagles or any other street gang. While sitting on the hood of his automobile, he saw codefendants Oscar Chacon (Oscar) and Edwin Gomez in the park with the victim. He saw Oscar and Gomez make gang signs with their hands to elicit a response from the victim relating to his gang affiliation. After they determined that the victim was a rival gang member, Oscar and Gomez walked with the victim to the west side of the park. Estavia saw Oscar and Gomez begin to physically beat the victim and then saw other members of the codefendants' gang, including defendant, come from other locations in the park and join in the beating. Estavia then testified he left the area. Estavia admitted telling police on August 22, 1992, and giving a written statement that defendant was armed with a .22-caliber gun and that he saw defendant shoot the victim once. Estavia went to the police because he was told that someone had implicated him in the murder. However, during a deposition taken after his statement to police and prior to trial, Estavia testified that he did not see defendant shoot the victim. Defendant used the deposition testimony to impeach Estavia at trial. On cross-examination, Estavia testified that he was intoxicated from alcohol and cocaine when he gave the police the statement. On redirect examination, Estavia testified that he was under the influence of drugs and alcohol during his deposition, but was not intoxicated from alcohol or drugs when he gave his statement to the police.

Estavia further testified that an unknown person had threatened his wife at work in August 1992 and that his automobile windows were shot out sometime after he went to the police. In addition, his niece had been threatened at school when she was told that there would be problems if Estavia testified. Estavia was later placed under protective custody in 1993 after he claimed an unknown person shot at him. On May 4, 1993, Estavia gave another statement in

**2**

the presence of a court reporter to private investigators hired by defendant recanting the statement he had previously given to police. He denied telling police that a high-ranking member of the Latin Eagles was present when he gave the statement.

Estavia's testimony was further tainted when he failed to appear in court at two earlier trial dates, and a warrant was issued for his arrest. Estavia attempted to flee when police came to his home, arrested him and brought him to court, where a petition for contempt was filed against him. A police officer brought him to court when he testified on February 24, 1994. He testified he was not offered any deals regarding his pending contempt charges at the time of his testimony.

Edwin Villariny, a former member of the Latin Eagles, also testified for the State. He knew defendant from the Gill Park neighborhood and denied at trial being in the area on June 28, 1992. However, he provided a statement to the police that he was at Gill Park with defendant and codefendants the night of the shooting. His statement further corroborated Estavia's trial testimony that defendant shot the victim once as he fled and that Oscar shot the victim an additional four times. Villariny also told the police in his statement that he saw a third, unknown man on a bicycle follow the victim and shoot him a sixth time. Villariny repeated the information in his statement before the grand jury, but recanted everything at defendant's trial, testifying he was not at Gill Park on the night in question. He confirmed that he gave the police the written statement, but testified it was coerced and untrue. He claimed that the police interrogated him for two days while he was handcuffed to a wall, and he was struck by a police officer. He further claimed that the police threatened to charge him with a narcotics offense and

3

call the Department of Children and Family Services on his family.

Detective John Murray and Assistant State's Attorney Patrick McGuire both testified denying Villariny's claims of coercion and brutality.

The State also offered into evidence Oscar's statement to the police admitting that he shot the victim and that a second person riding a bicycle on Sheridan Road also shot the victim, but that they were the only shooters. Oscar refused to identify the man on the bicycle. There is no mention of defendant in his statement.

Forensic evidence showed the victim died of multiple gunshot wounds. The victim had been shot six times, but only five bullets were recovered from his body, including one .32-caliber and four .22-caliber bullets. The medical examiner testified that the pattern of gunshot wounds indicated that at least four bullets entered from the victim's back and went through to the front of his body. He found no evidence of close-range firing, which he defined as gunshots taken from 18 inches to 2 feet from the victim.

Defendant called his friend Arthur Dunlam, who was a Vietnam War veteran and not a member of the Latin Eagles or any other gang, to testify as an alibi witness. Dunlam testified that he was at Gill Park with defendant on the night of June 28, 1992. At 9:45 p.m. they were drinking beer with a group of men and heard what sounded like shots being fired but did not see anyone shooting or fighting and did not participate in any events with the victim.

The trial court found defendant guilty of first degree murder and sentenced him to 47 years in prison. Defendant's conviction and sentence were affirmed on direct appeal. See People v. Ortiz, No. 1-94-2094 (1996) (unpublished order under Supreme Court Rule 23). Defendant

filed a postconviction petition claiming actual innocence and ineffective assistance of counsel that was summarily dismissed. The dismissal was later affirmed on appeal. See People v. Ortiz, No. 1-98-1311 (1999) (unpublished order under Supreme Court Rule 23).

Defendant filed a second postconviction petition alleging actual innocence and ineffective assistance of counsel based on affidavits by Victoria Khan and Victor Ocasio. Kahn said in her affidavit she witnessed the shooting and was brought to the police station to view the lineup, but Kahn could not identify the shooter. Ocasio said he saw Oscar chase the victim down Sheridan Road and shoot the victim four times. The affidavit also stated that he saw Efrain Chacon on a bicycle shoot at the victim three times. He did not mention defendant in his affidavit. Ocasio, a former member of defendant's gang, said he did not come forward with this information sooner because he feared for his safety.

The trial court found the affidavits did not constitute newly discovered evidence and were cumulative of the evidence at trial. The trial court dismissed defendant's second postconviction petition. This court affirmed. See People v. Ortiz, No. 1-01-0368 (2003) (unpublished order under Supreme Court Rule 23).

Defendant filed a third postconviction petition, which is the subject of this appeal. Defendant alleges actual innocence based on affidavits by Sigfriedo Hernandez, Daniel Huertas and Victor Ocasio. The trial court held an evidentiary hearing on the petition. Hernandez testified at the hearing that he knew defendant because they were both members of the same street gang. Hernandez said he was at Gill Park on the night in question. When Hernandez entered the park, he saw Oscar, Efrain Chacon (Efrain) and Miguel Renteria beating the victim.

Hernandez said he walked away from the beating to meet a friend who gave him marijuana to sell. After obtaining the marijuana, Hernandez began walking out of the park. As he was leaving, Hernandez saw Oscar and Efrain on their bicycles, pursuing the victim on Sheridan Road. Hernandez saw Oscar and Efrain leave their bicycles, pull out guns and point those guns at the victim. Hernandez said that he then heard gunshots. Hernandez denied seeing defendant at the park. When asked during cross-examination why he did not come forward with this account sooner, Hernandez explained he and defendant were not close and had been in conflict. Hernandez and defendant had been dating the same girl, and defendant became angry and often tried to have him arrested or beaten.

Hernandez testified that he did not tell anyone what happened that night because he was afraid that other members of the Latin Eagles would kill him if he did. He moved to Wisconsin in late 1992 or early 1993, and he came back in June 2003 for the Puerto Rican parade, where he ran into defendant's mother. He testified that he felt compelled to tell her what he knew about the events that put her son in jail, and he agreed to put down in writing what he had told her because he felt bad for her. Hernandez said he finally came forward with the information "[t]o get it off [his] chest."

The trial court found Hernandez's testimony cumulative and insufficient to warrant a new trial. The court explained in its written opinion:

> "The two eye-witnesses at the trial knew the defendant and said that the
> defendant was the shooter. This case did not deal with an identification
> issue but rather a question of credibility and the court found the two eye-

**6**

witnesses to be credible. Therefore this court finds that *** Hernandez's testimony was cumulative when weighed against the other two eye-witnesses who testified during the trial."

The trial court denied defendant's postconviction petition and this appeal followed.

ANALYSIS

A postconviction petitioner is entitled to an evidentiary hearing when he makes a substantial showing that his constitutional rights were violated. People v. Coleman, 183 Ill. 2d 366, 381 (1998). Because the postconviction trial judge is in the best position to observe and weigh the credibility of witnesses testifying at an evidentiary hearing, his findings of fact will not be overturned unless those findings are manifestly erroneous. Coleman, 183 Ill. 2d at 384-85. A trial court's finding is manifestly erroneous where an opposite conclusion is clearly evident, plain and undisputable. People v. Morgan, 212 Ill. 2d 148, 155 (2004).

Not every constitutional violation may be challenged through a postconviction proceeding. Coleman, 183 Ill. 2d at 380. Only those violations that were not, nor could have been, challenged during an earlier proceeding are properly raised and considered. Morgan, 212 Ill. 2d at 153. For this reason, the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)) contemplates the filing of only one postconviction petition. 725 ILCS 5/122-3 (West 2004) ("[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"); see also Morgan, 212 Ill. 2d at 153. The statutory bar to

successive postconviction petitions will be relaxed only in the interest of fundamental fairness. Morgan, 212 Ill. 2d at 153.

Before discussing the merits of defendant's postconviction petition, this court must consider the State's argument that the trial court should not have allowed a successive postconviction petition. The State argues that the Post-Conviction Hearing Act contemplates the filing of only one petition per defendant, and that to qualify for a successive petition, the new petition must satisfy the cause-and-prejudice test discussed by the Illinois Supreme Court in People v. Pitsonbarger. 205 Ill. 2d 444, 459 (2002). The State argues that defendant did not satisfy this test, and thus, the trial court should have denied the petition outright. We find that the State's argument is not persuasive.

The "cause-and-prejudice test as defined in Pitsonbarger" was "adopted" by our legislature and made part of the Post-Conviction Hearing Act. People v. Anderson, 375 Ill. App. 3d 121, 135 (2007); People v. Brockman, 363 Ill. App. 3d 679, 688 (2006) ("Subsection (f) was clearly intended by the General Assembly to codify the cause-and-prejudice test adopted by the supreme court in Pitsonbarger."). Effective January 1, 2004, our legislature adopted the test by adding subsection (f) to Section 122-1 of the Post-Conviction Hearing Act. Subsection (f) states in full:

> "Only one petition may be filed by a petitioner under this
> Article without leave of the court. Leave of court may be granted
> only if a petitioner demonstrates cause for his or her failure to
> bring the claim in his or her initial post-conviction proceedings and

**8**

prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1 (West 2004).

After the legislature adopted the Pitsonbarger cause-and-prejudice test, our supreme court decided People v. Morgan, 212 Ill. 2d 148 (2004). Although the Morgan decision analyzed cause and prejudice, it did not cite the newly enacted subsection (f). 725 ILCS 5/122-1 (West 2004). Presumably because of the date when the postconviction petition before it was filed, our supreme court in Morgan cited and discussed Pitsonbarger and other cases instead. Morgan, 212 Ill. 2d at 153-54.

Even though Morgan did not discuss the newly enacted subsection (f) and Pistonbarger was decided before it was enacted, both cases are instructive about what constitutes cause and prejudice under the statute, because the definitions of cause and prejudice in these cases are similar to the definitions contained in subsection (f). Morgan, 212 Ill. 2d at 153-54; Pitsonbarger, 205 Ill. 2d at 460 (cause is an objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding), 473 (prejudice occurs when the issue so infected the trial that the resulting conviction or sentence violated due process).

In sum, under both statute and case law, a petitioner seeking to establish fundamental fairness to bring a successive postconviction petition must show: (1) good cause for failing to raise the claimed error in an earlier proceeding; and (2) actual prejudice resulting from the error. 725 ILCS 5/122-1(f) (West 2004); Morgan, 212 Ill. 2d at 153. "Cause" is "an objective factor that impeded [petitioner's] ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f)(1) (West 2004); Morgan, 212 Ill. 2d at 153 ( "cause" is "an objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding"). Prejudice exists where the petitioner can show that "the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f)(2) (West 2004); Morgan, 212 Ill. 2d at 154 ("'Prejudice' exists where the defendant can show that the claimed constitutional error so infected his trial that the resulting conviction violated due process") .

The State argues on appeal that defendant failed to show cause and prejudice, and his successive postconviction petition was properly denied under section 122-3 of the Act (725 ILCS 5/122-3 (West 2004)). However, in Pitsonbarger, our supreme court stated that a showing of actual innocence[1] will excuse a failure to show cause and prejudice:

---

[1]In Morgan, the State conceded that the defendant had met the cause-and-prejudice test because of " 'the seriousness of an actual innocence claim in a potentially capital case.' " Morgan, 212 Ill. 2d at 154. Since the State conceded the issue, our supreme court in Morgan did not have the occasion to consider whether a claim of actual innocence satisfied the cause-and-

"We hold today that the cause-and-prejudice test is the analytical

tool that is to be used to determine whether fundamental fairness

requires that an exception be made to section 122-3 so that a claim

raised in a successive petition may be considered on its merits. We

reaffirm that even if the petitioner cannot show cause and

prejudice, his failure to raise a claim in an earlier petition will be

excused if necessary to prevent a fundamental miscarriage of

justice. To demonstrate such a miscarriage of justice, a petitioner

must show actual innocence or, in the context of the death penalty,

he must show that but for the claimed constitutional error he would

not have been found eligible for the death penalty." Pitsonbarger,

205 Ill. 2d at 459.

In other words, fundamental miscarriages of justice will not be tolerated in favor of

finality. Morgan, 212 Ill. 2d at 154 ("The conviction of an innocent person violates the due

process clause of the Illinois Constitution"). See also People v. Brown, 225 Ill. 2d 188, 206

(2007) (actual innocence was listed as an exception to the cause-and-prejudice test; however

postconviction petition at issue was filed before subsection (f) took effect).

Even though Pitsonbarger was decided before section (f) took effect, its exception for

actual innocence still applies. First, as noted before, its definitions of cause and prejudice are

---

prejudice test.

very similar to the definitions adopted by the legislature for the same terms, and thus its discussions of those terms are still instructive. Second, as noted before, the legislature adopted the cause-and-prejudice test from Pitsonbarger. Third, in appellate court cases involving postconviction petitions filed after January 1, 2004, when section (f) became effective, several districts of the appellate court have concluded that the actual innocence exception still applies. People v. Anderson, 375 Ill. App. 3d 121, 144-45 (1st Dist. 2007) (defendant's failure to raise a claim in his earlier postconviction petition will be excused if he can demonstrate either "cause and prejudice or actual innocence"); People v. Coleman, 381 Ill. App. 3d at 561 (3rd Dist. 2008) (if "a petitioner cannot meet the cause and prejudice test, the failure to bring a claim in a prior postconviction petition will be excused" if he can "show actual innocence"); People v. Daniel, 379 Ill. App. 3d 748, 750 ( 4th Dist. 2008) (in addition to a showing of cause and prejudice, "a showing of actual innocence may also relax the statutory bar"). But see People v. Brockman, 363 Ill. App. 3d 679, 689-690 (5th Dist. 2006) (appellate court affirmed dismissal of postconviction petition of defendant who claimed actual innocence, because he had failed to show cause and prejudice). Since the actual innocence exception still applies, and the defendant has made a showing of actual innocence, this court must now analyze the merits of the petition in the case at bar.

Defendant contends on appeal that he should be granted a new trial because the trial court refused to consider eyewitness testimony as sufficient to support a claim of actual innocence and because the trial court failed to consider the trial evidence in light of the new testimony.

Defendant argues that these actions amounted to manifest errors on the part of the trial court, therefore entitling him to a new trial.

"In Illinois, newly discovered evidence warrants a new trial when: (1) it has been discovered since the trial; (2) it is of such a character that it could not have been discovered prior to the trial by the exercise of due diligence; (3) it is material to the issue but not merely cumulative; and (4) it is of such a conclusive character that it will probably change the result on retrial." People v. Williams, 295 Ill. App. 3d 456, 462 (1998), citing People v. Molstad, 101 Ill. 2d 128, 134 (1984). "Motions for new trial on grounds of newly discovered evidence are not looked upon favorably by the courts and should be subject to the closest scrutiny." Williams, 295 Ill. App. 3d at 462.

This court agrees with defendant's argument that Hernandez's testimony warranted a new trial and that the trial court committed manifest error in denying a new trial. Hernandez's testimony is newly discovered, material, and noncumulative, and probably would have changed the result on retrial. Hernandez not only testified that Oscar shot the victim, he was the only witness who identified the other shooter as Efrain, Oscar's brother. The trial court erred when it found that the testimony was cumulative and when it failed to consider its effect on the result at a retrial.

Hernandez's testimony is newly discovered evidence. Evidence is newly discovered when it has been discovered since the trial and is of such a character that it could not have been discovered prior to the trial by the exercise of due diligence. Molstad, 101 Ill. 2d at 134. The trial court did not specifically state whether it considered Hernandez's testimony to be newly

**13**

discovered, but the fact that the court granted an evidentiary hearing following a review of the affidavit indicates that the trial court did consider the testimony to be newly discovered. Defendant discovered Hernandez's testimony when Hernandez spoke with defendant's mother over 10 years after the trial. Given defendant's alibi that he was drinking beer on the other side of the fieldhouse where he could not have seen Hernandez or the crime, there is no reason to suggest that defendant knew Hernandez had witnessed the crime. According to Hernandez, Oscar and Efrain Chacon saw him there, but the two men were not going to divulge this knowledge since Hernandez would be testifying against them. Additionally, Hernandez fled the state a few months after the crime, making the discovery of his testimony all the more difficult. Thus, Hernandez's testimony is newly discovered.

Defendant cites Molstad in support of his contention that eyewitness testimony is not cumulative. Molstad, 101 Ill. 2d at 134. We agree. In Molstad, the defendant in a criminal battery case was convicted based largely on the testimony of an eyewitness to the crime. Molstad, 101 Ill. 2d at 134. The defendant had presented alibi testimony at trial. Molstad, 101 Ill. 2d at 134. In a postrial motion prior to sentencing, the defendant presented the affidavits of five codefendants, all of which stated that the defendant was not present during the time of the attack. Molstad, 101 Ill. 2d at 134. The Molstad court held that this new testimony was not cumulative because it would create new questions in the mind of the trier of fact, since it went to an ultimate issue in the case: "Who was present at the time of the attack[?]" Molstad, 101 Ill. 2d at 135.

In the case at bar, Hernandez's testimony was material and not cumulative. Evidence is considered cumulative where it "adds nothing to what [was] already before the jury." Molstad, 101 Ill. 2d at 135. The trial court determined that Hernandez's testimony did not warrant a new trial because the testimony was "cumulative when weighed against the other two eyewitnesses who testified during the trial." Seemingly, the trial court's logic was that because the fact finder had already heard the testimony of two eyewitnesses, the testimony of another eyewitness would not add anything to what was already before the fact finder. However, as in Molstad, this new eyewitness testimony was not cumulative because it would create new questions in the mind of the trier of fact, since it also went to an ultimate issue in the case: "Who was present at the time of the [shooting?]" Molstad, 101 Ill. 2d at 135. In addition, the claimed two eyewitnesses to the shooting recanted their testimony at trial, and the new eyewitnesses implicated the codefendant's brother, which explains why the codefendant did not identify the other shooter.

Based on our supreme court's decision in Molstad that the eyewitness testimony before it was not cumulative of other eyewitness testimony, this court finds that Hernandez's testimony is not cumulative. Like the defendant in Molstad, the defendant in the instant case offered alibi evidence at trial and attacked the credibility of the State's eyewitnesses. Also like the defendant in Molstad, the instant defendant presented eyewitness affidavits claiming that defendant was not present at the scene of the crime. Hernandez's testimony goes even further by naming an entirely new offender, Efrain Chacon. It is difficult to see how this new testimony would not add anything to what is already in front of the fact finder. Just as our supreme court in Molstad found

**15**

that the eyewitness testimony is not cumulative, this court must find that Hernandez's testimony before it was not cumulative.

This court is not persuaded by the State's attempt to differentiate Molstad from the instant case. The State argues that the case against the defendant in Molstad was weaker than the case against the instant defendant. The strength of the evidence against the defendant's claim of innocence played no role in our supreme court's determination of whether the new evidence before it was cumulative. Molstad, 101 Ill. 2d at 135. The determination of whether the new evidence would probably change the result on retrial was considered as an entirely separate issue from whether the new evidence was cumulative. Molstad, 101 Ill. 2d at 135. While examining the cumulativeness issue, our supreme court looked at the *type* of evidence presented at trial, while considering the outcome-at-retrial issue, our supreme court looked at the *weight* of the evidence presented at trial. Molstad, 101 Ill. 2d at 135. Molstad and the instant case both involve the same *type* of evidence, namely eyewitness testimony. Thus, on the issue of lack of cumulativeness, these cases are substantially similar.

Also, Hernandez's testimony probably would have changed the result on retrial. In its order denying defendant's petition for a new trial, the trial court found that the additional eyewitness testimony was cumulative, but it did not specifically rule on whether the new testimony would have probably changed the result on retrial. Since we find that Hernandez's testimony is not cumulative, this court must decide whether the testimony would probably change the result on retrial. This court finds that the result on retrial probably would change.

At retrial, the evidence of defendant's innocence would be much stronger. Defendant would be able to offer the testimony of Hernandez, the only witness to the entire event other than Oscar, who would testify that defendant was never present at the crime. He would also have Ocasio's testimony that Efrain Chacon shot the victim, corroborating Hernandez's testimony. This evidence was never viewed in conjunction with Hernandez's testimony. Although Ocasio's statement was not relevant previously because he did not see the whole event, the statement becomes relevant when viewed in conjunction with Hernandez's testimony because both men name Efrain Chacon as the second shooter. All of this evidence corroborates Oscar Chacon's original statement to the police, which states that there were only two shooters. The State argues that this statement was only part of the case against Oscar Chacon because the cases were severed; however, this contention is not supported anywhere in the record.

Also, at retrial, the evidence of defendant's guilt would be weaker. The only evidence offered against defendant was the eyewitness testimony of Estavia and Villariny. Both of these men recanted their statements at some point, but the trial court found that these recantations were not credible. However, Hernandez's testimony and the Ocasio affidavit would cast a shadow on Estavia's and Villariny's original statements and corroborate their recantations at retrial.

The State argues that Dr. Kirschner's testimony regarding the lack of evidence of close-range shooting and the likelihood that the victim was shot four times in the back refutes Hernandez's version of shooting. This court is not persuaded by this argument. Hernandez did not state that there was any close-range shooting or that the victim was not shot from behind. Also, as defendant points out, Dr. Kirschner was not called to testify as a rebuttal witness; thus,

**17**

his testimony cannot be used to show that Hernandez's version of the shooting was "virtually impossible." Hernandez's testimony is actually consistent with Dr. Kirschner's testimony.

The shift in strength of each side's case would probably create a reasonable doubt of defendant's guilt at retrial. Defendant no longer relies solely on alibi testimony. At retrial defendant would be able to attack the credibility of the State's eyewitnesses directly with his own eyewitnesses. In addition, there was no physical evidence pointing to defendant. The weight of the evidence in favor of defendant's innocence would be much stronger and would probably change the result upon retrial. Therefore, defendant must be granted a new trial.

## CONCLUSION

For the foregoing reasons we reverse the judgment of the circuit court and grant defendant a new trial.

Reversed.

CAHILL, P.J., dissents.

McBRIDE, J., specially concurs.

JUSTICE CAHILL, dissenting:

I respectfully disagree with the conclusion that Hernandez's testimony is noncumulative and of such a conclusive nature that it would probably change the result on retrial.

The majority compares Hernandez's testimony to that of Christopher Estavia and Edwin Villariny, both of whom testified that defendant shot the victim. The majority concludes, correctly, that *this* evidence is not cumulative. But the majority does not address Oscar Chacon's statement and Arthur Dunlam's testimony that defendant was not involved in the shooting. Oscar said in a statement admitted at defendant's trial that he and the bicyclist were the only shooters. Dunlam testified as an alibi witness and said defendant was with him at the time of the shooting. With the exception of the bicyclist's identity, Hernandez's testimony does not offer anything that was not already before the trier of fact. See People v. Molstad, 101 Ill. 2d 128, 135, 461 N.E.2d 398 (1984) (evidence that adds nothing to what is already before the trier of fact is cumulative). The identity of the bicyclist is not material to defendant's guilt and alone is not sufficient to warrant a new trial.

The majority concludes that under Molstad, Hernandez's testimony must be found not cumulative. Slip op. at 15-16. Like this case, the defendant in Molstad maintained his innocence by denying involvement in the crime. Molstad, 101 Ill. 2d at 132. Although the defendant offered alibi evidence, the testimony of his codefendants that he was not present for the crime was not available at trial. Molstad, 101 Ill. 2d at 132-33. Our supreme court granted the defendant a new trial, holding the testimony was not cumulative of the alibi evidence and was material to whether the defendant was involved in the crime. Molstad, 101 Ill. 2d at 135. Here, Oscar's statement that

19

defendant was not a shooter was offered into evidence at trial. Hernandez's testimony differed only with respect to the identity of the bicyclist.

The majority also concludes that Hernandez's testimony is enough to create a reasonable doubt of defendant's guilt on retrial. Slip op. at 17-18. This conclusion results in part from the majority's failure to address the cumulative impact of Hernandez's testimony on Oscar's statement and Dunlam's account of defendant's whereabouts. But more troubling is that Hernandez--in an affidavit executed more than 11 years after the shooting and the only predicate for a third postconviction petition--said he was engaged in a drug transaction at the time defendant allegedly shot the victim. Hernandez testified he saw Oscar, Efrain Chacon and Miguel Renteria beating the victim as he entered the park. Hernandez then met with Peter Reyes, a fellow gang member who supplied marijuana for Hernandez to sell. According to Hernandez's affidavit, four minutes transpired between the time he saw the fight and the time he saw Oscar and Efrain chasing the victim on Sheridan Road. Hernandez does not account for the period between the fight and the chase, which, according to Estavia and Villariny, was the time when defendant shot the victim.

I would affirm the trial court order denying defendant postconviction relief under these circumstances.

1-06-1314

McBride, J., specially concurring,

I write to specially concur because I agree that defendant should be given a new trial based upon the evidence presented to the trial court which, in my opinion, meets the cause and prejudice test outlined in 725 ILCS 5/122-1(f). Therefore, the majority discussion about case precedent since the 2004 enactment as to whether actual innocence remains an exception to the cause and prejudice requirement necessary for the filing of successive petitions is unnecessary. I agree with the analysis in all other respects therefore I specially concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
## (Front Sheet to be attached to each Opinion)

_____

Please use the ]
following form:]

]
] **THE PEOPLE OF THE STATE OF ILLINOIS,**
]
] **Plaintiff-Appellee,**
] **v.**
]
] **SALVADOR ORTIZ,**
]
] **Defendant-Appellant.**

Complete ]
  TITLE ]
of Case. ]

_____

Docket No. ]          No. 1-06-1314
]          Appellate Court of Illinois
COURT ]      First District, First Division
]
]            SEPTEMBER 08, 2008
Opinion Filed ]       (Month, Day and Year)

_____

]
JUSTICES ] PRESIDING JUSTICE ROBERT E. GORDON delivered
] the opinion of the court.
_____ ] CAHILL, J., dissents.
] McBRIDE, J., specially concurring.

_____

APPEAL from the] Lower Court and Trial Judge(s) in form indicated
Circuit Court ] in margin:
of Cook County;] Appeal from the Circuit Court of Cook County.
the Hon:_____ ]
Judge Presiding] Honorable Dennis Dernbach, Judge Presiding.

_____

For APPELLANTS ]Indicate if attorney represents APPELLANTS or
John Doe of    ]APPELLEES and include attorneys of counsel.
Chicago.       ]Indicate the word NONE if not represented.

1-06-1314

```
For APPELLEES, ]_____
Smith and        ]
Smith, of        ]    Baker & McKenzie, LLP
Chicago.         ]    Chicago, Illinois   60601
Brown,           ]    Attorneys for Appellant
of Counsel.      ]    Attn: Mark A. Oates, Angela C. Vigil and
                 ]          Jenny A. Austin
                 ]          OF COUNSEL
                 ]
                 ]
                 ]
                 ]    Richard A. Devine - State's Attorney -
                 ]    County of Cook
                 ]    Chicago, Illinois 60602
Also add atty.  ]    Attorneys for Appellee
for third party]     Attn: James E. Fitzgerald, Michelle Katz, and
appellants       ]          Tasha Marie Kelly
or appellees.   ]          OF COUNSEL
                 ]
_____(USE REVERSE SIDE IF NEEDED_____
```