Nos. 2--04--0495 & 2--04--0835 cons.          filed: 6/22/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 78--CF--317 |
| PHILLIP E. LAPOINTE, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, Phillip E. LaPointe, appeals a judgment denying him leave to file his second petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2004)).  He contends that (1) because the trial court did not rule on his petition until more than 90 days after it was filed, the judgment must be reversed and the cause remanded for proceedings in accordance with sections 122--4 through 122--6 of the Act (725 ILCS 5/122--4 through 122--6 (West 2004)) (see 725 ILCS 5/122--2.1(a) (West 2004)); and (2) the trial court erred in refusing to allow him to file his second postconviction petition, as he established "cause" and "prejudice" under section 122--1(f) of the Act (725 ILCS 5/122--1(f) (West 2004)).  We affirm the judgment in case No. 2--04--0495, and we dismiss the appeal in case No. 2--04--0835.

On March 7, 1978, taxicab driver Peter Moreno was shot to death in his cab in Elmhurst. The next day, the police arrested the defendant.  On March 14, 1978, the trial court held a

preliminary hearing. The defendant was represented by Aldo Botti. The principal witness was David Cichelli, who testified as follows. At the time of the murder, he knew the defendant and worked at a service station not far from the scene of the crime. Sometime between 8:30 a.m. and 9:30 a.m. on March 7, 1978, the defendant walked up to Cichelli there, told him that he was going to shoot a cab driver, and showed him a loaded gun. The defendant made a phone call and walked away. About an hour or two later, he returned and told Cichelli, "I shot him in the head." He said that he "did it for the money" and that he shot the driver because the driver recognized him.

On June 16, 1978, the defendant, now represented by Edwin Simpson, entered an open plea of guilty to first-degree murder.[1] On September 18, 1978, the trial court sentenced the defendant to natural life in prison, finding that the murder was accompanied by exceptionally brutal and heinous conduct indicative of wanton cruelty (see Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005--8--1(a)(1)). On appeal, the defendant raised several sentencing issues. The supreme court affirmed the trial court. People v. La Pointe, 88 Ill. 2d 482 (1981).

The defendant pursued several attempts at postconviction relief. In 1998, he filed a federal habeas corpus petition, which was dismissed as untimely. United States ex rel. LaPointe v. Cooper, No. 98--C--7557 (N.D. Ill. 1999). On January 12, 2001, he petitioned for habeas corpus in state court (see 735 ILCS 5/10--101 et seq. (West 2000)), arguing that his sentence violated Apprendi v.

---

[1]According to the defendant's second postconviction petition, Botti withdrew from the case on April 3, 1978, and Simpson began representing the defendant the same day.

New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The trial court dismissed the petition. We affirmed. LaPointe v. Chrans, 329 Ill. App. 3d 1080, 1086 (2002).

On May 1, 2002, the defendant filed his first petition for relief under the Act. As amended, the petition contended that the defendant's trial and appellate counsel were ineffective; that his sentence violated Apprendi; and that he was actually innocent. Although a trial court may not summarily dismiss a postconviction petition on the basis of untimeliness (see People v. Boclair, 202 Ill. 2d 89, 100 (2002)), we affirmed because the petition lacked merit. People v. LaPointe, No. 2--02–0702 (2003) (unpublished order under Supreme Court Rule 23).

In 2003, the defendant petitioned under section 116--3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116--3 (West 2002)) for DNA and fingerprint testing of evidence found in Moreno's cab, asserting that it would reveal that Cichelli actually committed the murder. The trial court dismissed the petition. We affirmed, explaining that relief under section 116--3 was unavailable because the defendant had pleaded guilty; that the defendant could not obtain fingerprint testing, as that technology had been available when he pleaded guilty; and that, because the defendant had pleaded guilty and did not advance a theory of innocence, he did not show that DNA testing would be relevant to a claim of actual innocence (see 725 ILCS 5/116--3 (West 2002)). People v. LaPointe, No. 2--03--0890 (2005) (unpublished order under Supreme Court Rule 23).

On January 28, 2004, without applying for or receiving leave of court, the defendant filed his second postconviction petition. It asserted that the defendant's trial, appellate, and postconviction counsel had all been ineffective. One respect in which trial attorney Simpson was allegedly ineffective was his failure to impeach Cichelli's testimony at the preliminary hearing. The petition attached affidavits from potential witnesses who, the defendant contended, could collectively refute Cichelli's testimony. The petition contended that Cichelli must have lied; that Simpson was

ineffective for failing to obtain or introduce the evidence that would have discredited Cichelli; and that the defendant would not have pleaded guilty had Simpson done his job properly.

The petition contended that Simpson was ineffective in many other respects. Most pertinent here, he allegedly suffered from a conflict of interest because, when he represented the defendant, he was also representing Cichelli in a separate criminal case. According to the petition:

"Through investigation this petitioner has learned that [Cichelli] also had criminal charges pending against him in Du Page County for *** solicating [sic] a minor. These charges were dismissed upon petitioner's belief as part of a deal with the State to testify, and that [sic] Mr. Simpson was the counsel representing the witness in that case. The evidence will show the pending charges and that Mr. Cichelli didn't want to testify against petitioner."

The petition attached Simpson's affidavit. However, the affidavit did not mention Cichelli or suggest anything about Simpson's professional relationship, if any, with Cichelli. The petition also referred to statements that Simpson made at hearings held April 18, 1978, and May 15, 1978, but the transcripts of these hearings were not attached, and the petition itself asserted only that they showed that Simpson was representing another client in a separate criminal case at the time.

The petition contended further that Simpson neglected to pursue the issue of the defendant's fitness; failed to advise the defendant fully about the State's offer of a plea bargain; and failed to call several potential witnesses at the sentencing hearing. Finally, the petition claimed that appellate counsel was ineffective by raising only sentencing issues and that Frederick Cohn, the defendant's principal attorney in his first postconviction proceeding, was ineffective.

The petition also contended that, because the defendant was not culpably negligent in filing it more than 25 years after the final judgment in the criminal case, it was not time-barred. See 725 ILCS 5/122--1(c) (West 2004). The alleged reasons that the defendant was not culpably negligent

were that (1) between 1984 and 2001, the defendant was denied access to a law library; and (2) Cohn failed to ascertain the time limit for filing a petition, and Aldo Botti, Cohn's successor, mistakenly filed the untimely federal habeas corpus petition instead of proceeding in state court under the Act. Further, the petition asserted that, relying on the erroneous advice of a prison law clerk, the defendant submitted only the "gist" of his claim with the first petition and included the affidavits and other evidence with his petition for DNA and fingerprint testing instead.

On April 2, 2004, the defendant filed a "motion for leave to file successive petition." The motion observed that, under section 122--1(f), effective January 1, 2004, only one postconviction petition may be filed without leave of court, which may be granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122--1(f) (West 2004); see Pub. Act 93--493, §5, eff. January 1, 2004. The motion contended that the petition met section 122--1(f)'s cause and prejudice test. Respecting "cause," it argued that the proceedings on the first postconviction petition were fundamentally flawed because the trial court based the summary dismissal on waiver. Also, Botti, who represented the defendant in the federal habeas corpus suit, withheld materials from him until the expiration of the two-year limitations period for a legal malpractice suit. Respecting "prejudice," the motion argued that the criminal proceedings were so pervaded with error that the defendant was denied due process. Specifically, after Dr. Lyle Rossiter pronounced the defendant fit, the trial court and Simpson failed to follow his recommendation for further testing; Simpson misinformed the defendant about the maximum sentence and the State's plea offer; and Simpson failed to tell the defendant that evidence, including fingerprints and hair samples, "prove[d]" his innocence.

Nos. 2--04--0495 & 2--04--0835 cons.

On April 28, 2004, the trial court denied the defendant leave to file the petition, explaining that the defendant "allege[d] the same issues he ha[d] alleged previously" and that he provided no reason "why he could not have filed anything previously." On May 11, 2004, the defendant mailed his notice of appeal from this order. We docketed this appeal as case No. 2--04--0495.

On July 15, 2004, the defendant filed a motion alleging that he had not received an order disposing of his petition and that, under section 122--2.1 of the Act (725 ILCS 5/122--2.1 (West 2004)), the trial court's failure to rule on the merits of the petition within 90 days required it to docket the petition for proceedings under sections 122--4 through 122--6 of the Act. On July 23, 2004, the trial court entered an order explaining that its April 28, 2004, order had denied the defendant leave to file his petition and stating that the petition was "dismissed." On August 18, 2004, the defendant filed a notice of appeal from this order. We docketed this appeal as case No. 2--04--0835. Later, we consolidated the appeals.

Before proceeding to the merits of the defendant's appeals, we must address our jurisdiction. The parties do not question our jurisdiction to hear either appeal. However, we must independently consider the matter and dismiss an appeal if jurisdiction is lacking. Smolinski v. Vojta, 363 Ill. App. 3d 752, 754 (2006). Appeals from postconviction proceedings are governed by the supreme court rules for criminal appeals. 134 Ill. 2d R. 651(b). Therefore, a defendant must comply with Supreme Court Rule 606(b) (188 Ill. 2d R. 606(b)) by filing his notice of appeal within 30 days after the order disposing of the petition or within 30 days after the entry of the order disposing of a timely filed motion attacking the judgment. People v. Fikara, 345 Ill. App. 3d 144, 152 (2003).

An order dismissing or denying a postconviction petition is immediately appealable because it disposes of the petition entirely. Fikara, 345 Ill. App. 3d at 151-52. An order denying a defendant leave to file a petition also disposes of the petition entirely, albeit by preventing the petition from

˘6˘

being filed at all. Thus, the April 28, 2004, order was immediately appealable under Supreme Court Rule 606(b). Because there was no timely postjudgment motion, the notice of appeal that the defendant mailed on May 11, 2004, was timely and provides us with jurisdiction in case No. 2--04--0495. However, as the defendant's motion of July 15, 2004, was untimely, the trial court's order of July 23, 2004, was neither an order disposing of the petition nor an order disposing of a timely postjudgment motion. Indeed, the order did no more than explain that the petition was no longer pending. The order's statement that the petition was thereby "dismissed" was simply inaccurate, as the court had earlier denied the defendant leave to file the petition at all. Thus, the notice of appeal that the defendant filed on August 18, 2004, was both superfluous and ineffective because the final appealable order in this cause was entered April 28, 2004. Therefore, we dismiss the appeal in case No. 2--04--0835.

We turn to the merits. The defendant contends first that the trial court erred in dismissing his petition summarily more than 90 days after the petition was filed. The defendant relies on section 122--2.1(a) of the Act, which states that "[w]ithin 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section" (725 ILCS 5/122--2.1(a) (West 2004)), and section 122--2.1(b) of the Act, which states that, if the petition is not summarily dismissed per section 122--2.1(a)(2) of the Act (725 ILCS 5/122--2.1(a)(2) (West 2004)), "the court shall order the petition docketed for further consideration in accordance with Sections 122--4 through 122--6." 725 ILCS 5/122--2.1(b) (West 2004). The defendant observes that, if a trial court fails to rule on a pro se petition within the prescribed period for preliminary review, then it must docket the petition for proceedings under sections 122--4 through 122--6 of the Act (People v. Porter, 122 Ill. 2d 64, 85 (1988)) and, if the defendant is indigent,

appoint counsel for him (<u>Porter</u>, 122 Ill. 2d at 74).  He maintains that he is entitled to such relief here.

The defendant's argument rests on a faulty premise.  As the State notes, the trial court did not <u>dismiss</u> the petition under section 122--2.1(a)(2) of the Act.  Instead, relying on section 122--1(f) of the Act, the trial court denied the defendant leave to <u>file</u> the petition.  Therefore, the defendant is simply mistaken in treating the judgment as though it were the first-stage dismissal of the petition. The petition never made it to the first stage.

The fallacy in the defendant's argument is manifest when we construe section 122--1(f), which reads:

"<u>Only one petition may be filed by a petitioner under this Article without leave of the court</u>.  Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure.  For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."  (Emphasis added.)  725 ILCS 5/122--1(f) (West 2004).

In construing statutes, we aim to ascertain the intent of the legislature.  <u>In re Detention of Powell</u>, 217 Ill. 2d 123, 135 (2005).  The best indicator of this intent is the statutory language itself, and, if that language is unambiguous, we must apply it straightforwardly.  <u>Village of Chatham v. County of Sangamon</u>, 216 Ill. 2d 402, 429 (2005).  Here, we conclude that section 122--1(f) requires a petitioner to obtain leave of court as a condition precedent to filing a second or subsequent

postconviction petition. That is simply the inescapable import of the first sentence of section 122--1(f). Thus, until the trial court grants such leave, a second or subsequent petition is not properly on file and may not be considered on its merits. To hold otherwise would be to treat section 122--1(f) as though it did not exist.

People v. Brockman, 363 Ill. App. 3d 679 (2006), supports our holding. As Brockman noted, before section 122--1(f) took effect, the Act did not require a defendant to obtain leave of court in order to file a second or subsequent postconviction petition. However, the long-standing judicial rule was that a defendant would be allowed such an opportunity only if fundamental fairness required. Brockman, 363 Ill. App. 3d at 687; see People v. Pitsonbarger, 205 Ill. 2d 444, 459 (2002). The touchstone of fundamental fairness was the same cause-and-prejudice test now embodied in section 122--1(f). Brockman, 363 Ill. App. 3d at 687; see Pitsonbarger, 205 Ill. 2d at 459. Also, even absent cause and prejudice, a second or subsequent postconviction petition would be allowed if necessary to prevent a "fundamental miscarriage of justice." Pitsonbarger, 205 Ill. 2d at 459. In a noncapital case, this meant that the defendant had to show actual innocence. Pitsonbarger, 205 Ill. 2d at 459.

Brockman held that, by enacting section 122--1(f) of the Act, the legislature intended to require a defendant seeking to file a second or subsequent postconviction petition to satisfy the cause-and-prejudice test before he could obtain a ruling on the merits of the petition itself. As the court reasoned, "[t]he statute does not specifically state that a defendant must obtain leave of the court before filing a successive petition, but that is the implication of the statute." (Emphasis in original.) Brockman, 363 Ill. App. 3d at 688. We agree.

Although we hold that section 122--1(f) unambiguously requires a defendant to obtain leave of the trial court before he may obtain review of a second or subsequent postconviction petition on

its merits, we note that, in other respects, the procedure is not as clear as might be desired. First, in contrast to section 122--2.1(a), which requires the trial court to make an initial ruling on a petition within 90 days after it has been filed (725 ILCS 5/122--2.1(a) (West 2004)), section 122--1(f) does not specify how long the trial court has to rule on a section 122--1(f) motion. Here, that omission is inconsequential; the defendant does not contend that the trial court was unduly tardy, and such a contention would lack merit, as the court disposed of the defendant's motion 26 days after it was filed. However, in a future case, the lack of a time limit may create difficulties. What section 122--1(f) leaves unclear is not merely when a delay becomes so severe as to violate a defendant's rights, but also what relief is proper in that event. Again, we note the contrast to section 122--2.1(b) of the Act, which specifies that, if the trial court does not rule on the merits of a petition within 90 days, it must docket the petition for proceedings under sections 122--4 through 122--6 of the Act. 725 ILCS 5/122--2.1(b) (West 2004). We respectfully recommend that the legislature consider crafting rules for proceedings under section 122--1(f).

Second, section 122--1(f) does not specify what materials the trial court may consider in deciding whether a petitioner has shown cause and prejudice. We cannot say from the text of section 122--1(f) whether the trial court must--or even may--consider the as-yet-unfiled petition as well as the section 122--1(f) motion. We shall not attempt to resolve this ambiguity here, but shall assume, solely for this appeal, that the trial court was required to consider not only the motion but also the allegations of the petition insofar as they related to cause and prejudice under section 122--1(f). This brings us to the second issue on appeal.

The defendant contends that the trial court erred in holding that he did not meet section 122--1(f)'s threshold requirements for filing his second postconviction petition. The defendant had to show (1) "cause," i.e., an objective factor that impeded his ability to raise his present claims in the

first postconviction proceeding, and (2) "prejudice," i.e., that the claimed error so infected the criminal proceedings that his conviction or sentence denied him due process. 725 ILCS 5/122--1(f) (West 2004). On appeal, the defendant has abandoned most of the grounds for relief that he asserted in his motion for leave to file the petition, including any claim of actual innocence. Those arguments are waived, and we do not consider them here. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001; People v. Sloup, 359 Ill. App. 3d 841, 845 (2005). Thus, we limit our discussion to the one claim that the defendant has preserved: that Simpson suffered from a conflict of interest because he simultaneously represented the defendant and Cichelli.

The defendant contends that he showed "cause" by alleging that he could not raise this claim in the prior postconviction proceeding because (1) he was denied access to a prison law library between 1984 and 2001; (2) Cohn, his principal postconviction attorney, did not act until the limitations period for filing the first petition expired; and (3) he relied on incorrect advice from a prison law clerk about the drafting requirements for the first petition. The defendant contends second that he demonstrated "prejudice" by alleging that Simpson's representation of Cichelli created a per se conflict of interest. See People v. Coleman, 301 Ill. App. 3d 290, 299 (1998).

In reviewing a trial court's ruling on whether a defendant has satisfied section 122--1(f)'s cause-and-prejudice test, we shall follow the same general principles that guide our review of the summary dismissal of a petition under section 122--2.1 of the Act (725 ILCS 5/122--2.1 (West 2004)) or the dismissal on the State's motion of a petition under section 122--5 of the Act (725 ILCS 5/122--5 (West 2004)). In each instance, the trial court has not found facts but has decided only that the petition itself, or the section 122--1(f) motion itself, is legally insufficient. The resolution of this question is not committed to the particular province or unique expertise of the trial court. Therefore,

we hold that, as with the summary dismissal of a postconviction petition or the grant of a motion to dismiss a petition, our review of the denial of a section 122--1(f) motion is de novo. See People v. Edwards, 197 Ill. 2d 239, 247 (2001); People v. Coleman, 183 Ill. 2d 366, 388-89 (1998).

We also hold that, in deciding whether a section 122--1(f) motion is sufficient, a court should not impose an undue burden on the defendant. We note that, to survive preliminary review on the merits, a petition must present only the "gist" of a meritorious claim and need not provide great detail, construct legal arguments, or cite to legal authority. Edwards, 197 Ill. 2d at 244; People v. Gaultney, 174 Ill. 2d 410, 418 (1996). The principal reason for this relaxed burden is that the typical postconviction petition is filed by " 'an indigent petitioner unschooled in legal drafting.' " Porter, 122 Ill. 2d at 74, quoting People v. Baugh, 132 Ill. App. 3d 713, 717 (1985). Nonetheless, even at the preliminary-review stage, a petition must be supported by "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122--2 (West 2004).

A motion under section 122--1(f) precedes the preliminary-review stage and thus, like the petition itself, will ordinarily be drafted by a lay person with limited legal skills. Therefore, we hold that a section 122--1(f) motion need state only the gist of a meritorious claim of cause and prejudice. Also, while section 122--1(f) does not require affidavits or other evidence to be attached to the motion, we conclude that the presence or absence of these materials can be relevant to whether the defendant has shown cause and prejudice.

With these principles in mind, we turn to the judgment on appeal. On our de novo review, we hold that the defendant did not establish even the gist of "cause" under section 122--1(f) of the Act and, therefore, the trial court correctly denied him leave to file his second postconviction petition.

In seeking to excuse his failure to raise the conflict-of-interest issue in his original postconviction petition, the defendant relies on three considerations: (1) his limited access to a law library between 1984 and 2001; (2) the failure of his original postconviction counsel to do anything until after the Act's limitations period expired; and (3) the incorrect advice from a "jailhouse lawyer" about drafting or supporting his petition. We conclude that these factors do not demonstrate "cause."

The first two factors are simply irrelevant to the defendant's burden under section 122--1(f). At most, his inability to use a law library and his counsel's inaction explain why the defendant was so late in filing his first postconviction petition. Neither factor explains why, when he did file the petition in May 2002, he failed to raise Simpson's conflict of interest as a ground for relief. Whether the defendant had some reasonable excuse for filing the first petition late is not the question under section 122--1(f); the question is whether, when he did file it, he had a reasonable excuse for failing to raise the claim that he now seeks to raise. See 725 ILCS 5/122--1(f) (West 2004).

The third factor that the defendant cites is similarly irrelevant and unavailing. Even if, arguendo, his reliance on the advice of a "jailhouse lawyer" was reasonable, that would explain only his failure to include supporting evidence along with whatever claims he raised in his first postconviction petition. It would not explain the failure of the petition itself to raise the conflict-of-interest claim at all.

Moreover, the defendant's mistaken reliance cannot be considered "cause" under section 122--1(f) in any event. In People v. Lander, 215 Ill. 2d 577 (2005), the defendant, who filed his postconviction petition outside the limitations period, argued that he was free from culpable negligence (see 725 ILCS 5/122--1(c) (West 2000)) because he reasonably relied on the legal advice of a "jailhouse lawyer" and a prison law librarian. Lander, 215 Ill. 2d at 586-88. The supreme court

disagreed, explaining that the defendant's reliance on these dubious sources of advice about the Act was not reasonable. Lander, 215 Ill. 2d at 588.

Although the court cautioned that its holding was "fact-specific and *** not amenable to an easily defined standard or rule" (Lander, 215 Ill. 2d at 589), the circumstances here are no more favorable to the defendant than those in Lander were to the defendant there. Here, the defendant alleges only that he relied on the legal advice of a prison law clerk, with no apparent expertise in the area of postconviction procedure (see Lander, 215 Ill. 2d at 587-88), when he attached the pertinent evidence to his later-filed petition for DNA and fingerprint testing instead of to the postconviction petition itself. Even for a prisoner proceeding pro se, the failure to attach supporting evidence to the petition, where it obviously belonged, was plainly unreasonable. Furthermore, the defendant was on notice that the petition had to "have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122--2 (West 2002); see Lander, 215 Ill. 2d at 588-89.

The defendant did not show cause for failing to raise the conflict-of-interest issue in his first postconviction petition. Therefore, he did not satisfy section 122--1(f) of the Act, and we need not decide whether he failed to demonstrate "prejudice" as well. However, we note that, although the claim that Simpson suffered from a per se conflict of interest is a most serious one, there are two serious infirmities in the petition's presentation of this contention.

First, in claiming that Simpson represented Cichelli and that Cichelli testified against the defendant in return for the dismissal of the charge against him, the petition relies upon the defendant's "belief." To support this belief, the petition cites the transcripts of the proceedings for April 18, 1978, and May 15, 1978, and Simpson's affidavit. However, the cited transcripts are not attached to the petition and, even according to the petition, they show only that Simpson was

representing an unspecified person in another criminal case at the time. Simpson's affidavit does not even mention Cichelli, much less say anything about whether Simpson ever represented him or influenced his decision to testify at the defendant's preliminary hearing. Although the petition proclaims that the evidence "will show" that Simpson represented Cichelli and maneuvered him into testifying, it provides no such evidence, even though the defendant had almost 26 years to investigate and managed to obtain Simpson's affidavit to support several other claims. Therefore, even construing the petition liberally (see Edwards, 197 Ill. 2d at 244-45), we could hardly say that it demonstrates prejudice.

Second, the defendant's counsel at the preliminary hearing of March 14, 1978, was Aldo Botti. The defendant does not allege that Botti was ineffective for failing to impeach Cichelli. Also, according to the petition, Simpson did not take over as the defendant's counsel until April 3, 1978. Therefore, it is inherently implausible that Simpson's alleged conflict of interest deprived the defendant of the opportunity to impeach a witness who had testified three weeks before Simpson took the defendant's case. In any event, even if the defendant could show prejudice, his failure to show cause is fatal to his argument that he satisfied section 122--1(f) of the Act.

In a final sally, the defendant argues that, even if he did not satisfy section 122--1(f)'s cause-and-prejudice test, he should be allowed to litigate his claim that Simpson's conflict of interest denied him due process and the effective assistance of counsel. The defendant relies on Sawyer v. Whitley, 505 U.S. 333, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992), which held that, even if a petitioner does not meet the cause-and-prejudice test for filing a second or subsequent federal habeas corpus petition, a federal court may hear the petition if necessary to prevent a " 'miscarriage of justice.' " Sawyer, 505 U.S. at 339, 120 L. Ed. 2d at 279, 112 S. Ct. at 2518. We reject the defendant's argument.

Although the defendant relies on <u>Sawyer</u>, he inexplicably overlooks its narrow definition of "miscarriage of justice." Immediately after setting out this exception to the cause-and-prejudice requirement, the Supreme Court explained that it applies only if the petitioner " 'establish[es] that under the probative evidence he has a colorable claim of factual innocence.' " <u>Sawyer</u>, 505 U.S. at 339, 120 L. Ed. 2d at 280, 112 S. Ct. at 2519, quoting <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454, 91 L. Ed. 2d 364, 381, 106 S. Ct. 2616, 2627 (1986). Thus, the Court created an exception no broader than our supreme court recognized in <u>Pitsonbarger</u>. See <u>Pitsonbarger</u>, 205 Ill. 2d at 459.

Here, the defendant does not and cannot reasonably contend that the allegation that Simpson had a conflict of interest raises a colorable claim of actual innocence. Even could we read the petition as asserting a claim of actual innocence, the defendant has abandoned that claim here. Finally, the materials that the defendant attached to his petition negate any such claim. Dr. Lyle Rossiter's April 18, 1978, report to Simpson relates that the defendant told Rossiter that he remembered obtaining a gun, showing it to his friend at a gas station, obtaining the taxicab ride, and, shortly afterward, seeing the driver on the floor of the cab as the defendant drove it away in order to avoid a nearby police car. Rossiter's report of his examination of the defendant on February 11, 1997, states that the defendant said that he robbed Moreno because he needed money after losing his job and that he had not planned to kill Moreno but "got scared" and shot him.

Under all of these circumstances, we cannot say that the defendant's second postconviction petition raises a colorable claim of actual innocence. Therefore, it was not a miscarriage of justice for the trial court to deny the defendant leave to file the petition.

The judgment of the circuit court of Du Page County is affirmed in case No. 2--04--0495. The appeal is dismissed in case No. 2--04--0835.

No. 2--04--0495, Affirmed.

No. 2--04--0835, Appeal dismissed.

McLAREN and O'MALLEY, JJ., concur.