3-08-0837
consolidated with No.3-09-0007

Filed October 22, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court
ILLINOIS, ) For the 12th Judicial Circuit
) Will County, Illinois
Plaintiff-Appellee, )
)
v. ) No. 99-CF-189
)
CHRISTOPHER McDONALD, ) Honorable Carla Alessio-Policandriotes,
) Judge, Presiding
Defendant-Appellant. )

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant Christopher McDonald was found guilty of first degree murder, two counts of aggravated battery with a firearm, aggravated discharge of a firearm, and unlawful use of a weapon by a felon. The trial court denied McDonald leave to file a successive postconviction petition and granted the State's motion to dismiss his petition filed pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2006). He follows with this appeal. We affirm the trial court.

FACTS

Following a jury trial, defendant Christopher McDonald was found guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 1998)), two counts of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 1998)), aggravated discharge of a firearm (720 ILCS 5/24-1.2 (West

1998)), and unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 1998)), in connection with the shooting death of John Gholston and the wounding of two other victims. The trial court sentenced McDonald to concurrent prison terms of 35 years for first degree murder, 10 years for aggravated discharge of a firearm, and 5 years for unlawful use of a weapon by a felon. McDonald was also sentenced to 10-year terms for the aggravated battery counts that were consecutive to each other and to the murder sentence. Following his direct appeal, this court affirmed McDonald's conviction and sentence. *People v. McDonald*, 322 Ill. App. 3d 244, 749 N.E.2d 1066 (2001). McDonald's subsequent petition for postconviction relief was summarily dismissed by the trial court and we affirmed the trial court's decision. *People v. McDonald*, No. 3-02-0650 (2003) (unpublished order under Supreme Court Rule 23). A successive postconviction petition filed by McDonald was also summarily dismissed and this court, again, affirmed the trial court. *People v. McDonald*, 364 Ill. App. 3d 390, 846 N.E.2d 960 (2006). In the instant appeal, McDonald asserts the trial court erred in denying him leave to file his second successive postconviction petition and erred in granting the State's motion to dismiss the petition he filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2006)). The facts from McDonald's trial that are relevant to this appeal are as follows.

On February 9, 1999, John Gholston was driving a stolen car with three passengers, Derrick Gholston, Lucias Byes and Courtney Ward. Ward sat in the front passenger seat and Derrick and Byes sat in the backseats. Byes testified that while they were parked in an apartment complex parking lot, McDonald walked up to the vehicle and became embroiled in an argument with John. John started to get out of the car and McDonald shot him in the chest. McDonald then fired several shots into the vehicle, wounding Byes. Byes stated the people in the vehicle in which he was riding had no

2

weapons he knew of and they were not out to "get [McDonald]." At the time of his testimony Byes had a felony criminal record.

Ward testified that while they were in the parking lot of the apartment complex, he witnessed McDonald walk up to a green car that was behind the car John was driving and receive a gun. McDonald then approached the vehicle Ward was in, and as John began to exit the car, McDonald shot him in the chest or stomach. Ward exited the vehicle and ran from the scene. He hid in a stairwell until he saw the police arrive. Ward admitted that he initially denied being in John's vehicle at the time of the shooting. He testified he was afraid at the time that someone would "come looking for [him]." Ward also admitted to giving multiple different statements to the police. Ward stated that no one in the vehicle that night had a weapon and that they had no intention of robbing or attacking McDonald. Another witness testified that prior to the shooting, he witnessed a gray car driving through the parking lot followed by a green car. After the shooting, which he did not witness, he saw the green car leave the area in a hurry. On cross-examination, among other queries, defense counsel questioned Ward regarding his motives for testifying against McDonald.

McDonald testified that on the night in question, he was at the apartment complex when he encountered John driving a gray automobile. McDonald knew John and knew that he had been convicted of and sentenced to prison for armed robbery. John positioned his vehicle to block McDonald's. The cars were facing in opposite directions. McDonald, who was armed with a handgun he had brought with him in his vehicle, exited his vehicle and walked over to the driver's side of the car John was driving. John put socks on his hands and told McDonald, "break yourself, Bitch," slang for "give me your money, or whatever you have." McDonald testified a man sitting in the front passenger seat of John's vehicle pointed a gun at him and John began to exit the vehicle. McDonald,

3

in fear for his life, pulled out his weapon and shot John. He then fired toward the front passenger seat. He saw "white socks" coming toward him from the backseat and fired in that direction until he was out of bullets. He returned to his own vehicle and drove away. He disposed of his weapon in a quarry and went home. Later, he contacted an attorney and turned himself in to the police. McDonald had on his record a conviction for possession of drugs with intent to deliver. At the scene of the shooting, the police recovered black stocking caps and white socks from the ground near the stolen vehicle. White socks were also recovered along the route Ward said he took when he ran from the scene. Eleven .45-caliber spent shell casings and several bullets from the vehicle and the ground around the vehicle were also recovered. The bullets had all been fired from the same .45-caliber weapon. The shell casings were identical to each other, although it could not be determined if the bullets and the casings matched each other. No weapons were recovered from inside or outside the vehicle. As noted above, the jury convicted McDonald and he was sentenced to prison.

In his second successive postconviction petition, McDonald asserted that on July 18, 2007, while serving his sentence at Stateville Correctional Center, he was approached by Courtney Ward, who apologized for giving false testimony at McDonald's trial. Ward provided McDonald with a signed statement, made in the presence of a correctional officer, in which he stated that he, Derrick, John and Byes had intended to rob McDonald before McDonald fired his weapon at them. McDonald alleged in his petition that this newly acquired statement corroborated his trial testimony that on the night of the shooting he had fired his weapon in self-defense. Ward's signed statement was appended to McDonald's petition. Specifically, Ward stated: "I Courtney Ward under oath gave a fake statement saying that on February 9th 1999 that me[,] Derrick Gholston, John Gholston, Lucious

4

Byes was not going to rob Christopher McDonald, that our intentions were in fact to rob him but I got scared and ran."

On September 19, 2008, the trial court denied McDonald leave to file the successive postconviction petition. McDonald filed a notice of appeal that we address as No. 3-08-0837. On July 11, 2008, McDonald filed a section 2-1401 petition for a new trial. In his section 2-1401 petition, McDonald set forth the same allegations made in his postconviction petition. The State filed a motion to dismiss McDonald's section 2-1401 petition on the basis that it was untimely filed. The trial court granted the State's motion and McDonald filed a notice of appeal that we address as No. 09-0007. For the following reasons, we affirm the trial court's rulings on both petitions.

ANALYSIS

Under section 122-1(f) of the Post-Conviction Act (Act) (725 ILCS 5/122-1(f) (West 2006)), a defendant must obtain leave of the trial court before he may obtain review of a second or subsequent postconviction petition on its merits. *People v. LaPointe*, 365 Ill. App. 3d 914, 922, 850 N.E.2d 893, 899 (2006). To obtain leave to file a successive petition, as a threshold requirement, the defendant must satisfy the cause-and-prejudice test. *People v. LaPointe*, 227 Ill. 2d 39, 44, 879 N.E.2d 275, 278 (2007). In this respect, section 122-1(f) of the Act acts as a procedural hurdle to any consideration of the claims in the postconviction petition. *People v. Smith*, 383 Ill. App. 3d 1078, 1084, 892 N.E.2d 55, 61-62 (2008). " 'In the context of a successive post-conviction petition, *** the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute.' " *Smith*, 383 Ill. App. 3d at 1085, 892 N.E.2d at 62, quoting *People v. Pitsonbarger*, 205 Ill. 2d 444, 458, 793 N.E.2d 609, 620-21 (2002). Under the cause-and-prejudice test, the defendant must demonstrate "cause" for failing to raise the error in prior proceedings and

actual "prejudice" resulting from the claimed error. *People v. Orange*, 195 Ill. 2d 437, 449, 749 N.E.2d 932, 939 (2001). "Cause" has been defined as an objective factor that impeded defense counsel's efforts to raise the claim in an earlier proceeding and "prejudice" has been defined as an error which so infected the entire trial that the defendant's conviction violates due process. *Orange*, 195 Ill. 2d at 449, 749 N.E.2d at 939-40. We conduct a *de novo* review of the trial court's denial of leave to file a successive postconviction petition. *LaPointe*, 365 Ill. App. 3d at 923, 850 N.E.2d at 900.

In the instant case, McDonald has failed to show "cause," an objective factor that impeded defense counsel's efforts to raise this claim earlier. Although McDonald asserts he could not prove Ward lied in his trial testimony until Ward gave him the signed statement, Ward did in fact testify at McDonald's trial. Ward's trial testimony contradicted McDonald's testimony, in which McDonald asserted he acted in self-defense. Our review of the trial transcript indicates defense counsel vigorously cross-examined Ward about his testimony, raising inferences that were intended to call Ward's credibility into question with the jury. Thus, Ward's assertion that he was lying when he proffered his trial testimony is not "newly discovered evidence" that constitutes "cause" in McDonald's bid for a successive postconviction proceeding.

Mc Donald also has not shown that he was prejudiced, that the failure to raise his claim earlier so infected the trial that the resulting conviction or sentence violated due process. When rasing an allegation of false or perjured testimony in trying to establish a constitutional violation, a defendant must allege that the State knowingly used the alleged false testimony, or at the least exhibited some lack of diligence in allowing the testimony to go forward. *People v. Brown*, 169 Ill. 2d 94, 106, 660 N.E.2d 964, 970 (1995). In the absence of the State's involvement, the action of a witness falsely

6

testifying is an action of a private individual for which there is no remedy under the due process clause. *Brown*, 169 Ill. 2d at 106, 660 N.E.2d at 970. See *People v. Steidl*, 142 Ill. 2d 204, 254, 568 N.E.2d 837, 858-59 (1991) (recantation testimony is particularly unreliable when the recantation relied upon involves a confession of perjury). Here, McDonald has made no allegation the State knowingly used perjured testimony during the trial. He has failed to establish the elements of cause and prejudice.

We also do not consider McDonald's failure to raise his claim in an earlier proceeding should be excused in order to prevent a fundamental miscarriage of justice. In *Pitsonbarger*, the court stated that if the petitioner cannot show cause and prejudice, his failure will be excused if necessary to prevent a miscarriage of justice. *Pitsonbarger*, 205 Ill. 2d at 459, 793 N.E.2d at 621. To demonstrate a fundamental miscarriage of justice in a non-capital-murder case, the defendant must demonstrate actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459, 793 N.E.2d at 621. A request for a new trial based on newly discovered evidence of actual innocence must include an assertion of evidence which was not available at the defendant's trial and which the defendant could not have discovered sooner through the exercise of due diligence. *People v. Burrows*, 172 Ill. 2d 169, 180, 665 N.E.2d 1319, 1325 (1996).

In the instant case, although McDonald asserts Ward's prison statement was newly discovered evidence, the fact remains that Ward was available and did testify at McDonald's trial. Ward's testimony obviously conflicted with the testimony of McDonald and McDonald's counsel cross-examined Ward extensively. Furthermore, Ward's trial testimony was corroborated by the testimony of Byes and the lack of any physical evidence of other weapons at the scene of the crime. Notably, although Ward provided a statement to McDonald in which he stated he and the others had intended

to rob McDonald on the night of the shooting, he did not indicate that they were armed or that they took any steps toward carrying out a robbery plan. Furthermore, we reiterate that as a general rule, recantations are deemed highly unreliable. See *Burrows*, 172 Ill. 2d at 188, 665 N.E.2d at 1328 (finding new trial warranted where recanter did not merely recant her testimony, she made wholly self-incriminating admissions, under oath, that placed blame for the killing on herself and also exonerated the defendant of any involvement in the murder). Because McDonald failed to establish the threshold requirement of cause and prejudice and he has not demonstrated a claim of actual innocence, the trial court did not err in denying him leave to file a successive postconviction petition.

We turn next to McDonald's argument that the trial court erred in dismissing, as untimely, his section 2-1401 petition. A section 2-1401 petition for relief from final judgment is the forum in a criminal case to correct errors of fact occurring in the State's case, which, if known at the time judgment was entered, would have prevented the judgment's rendition. *People v. McLaughlin*, 324 Ill. App. 3d 909, 917, 755 N.E.2d 82, 88 (2001). Section 2-1401 of the Code provides a basis for obtaining relief from judgments based on false testimony. *Brown*, 169 Ill. 2d at 107-08, 660 N.E.2d at 970. "To obtain relief under this section, a defendant is not required to establish a constitutional violation or, in the case of false testimony, that the false testimony was knowingly used by the prosecution." *Brown*, 169 Ill. 2d at 107-08, 660 N.E.2d at 970. It is the province of the trial court to determine whether the defendant's evidence warrants a new trial. *Burrows*, 172 Ill. 2d at 180, 665 N.E.2d at 1324. We will disturb a trial court's determination only if it is against the manifest weight of the evidence. *Burrows,* 172 Ill. 2d at 180, 665 N.E.2d at 1324.

In the instant case, the State based its motion to dismiss McDonald's section 2-1401 petition on its untimeliness. Where a section 2-1401 petition is filed more than two years after the judgment

8

was entered, it cannot be considered absent a clear showing that the person seeking relief is under legal disability or duress or the grounds for relief were fraudulently concealed. *McLaughlin*, 324 Ill. App. 3d at 917, 755 N.E.2d at 88. Under the fraudulent concealment exception to section 2-1401's two-year period of limitations, the defendant must allege facts demonstrating his opponent affirmatively attempted to prevent the discovery of the purported grounds for relief and must offer factual allegations demonstrating his good faith and reasonable diligence in trying to uncover such matters before trial or within the limitations period. *McLaughlin*, 324 Ill. App. 3d at 918, 755 N.E.2d at 89. Such requirements are in place to curtail excessive and unnecessary appeals, lest the procedural bars enacted by the legislature be rendered virtually meaningless and the State's legitimate interest in the finality of criminal litigation constantly disrupted and jeopardized. *McLaughlin*, 324 Ill. App. 3d at 918-19, 755 N.E.2d at 89-90.

In the instant case, McDonald does not dispute his section 2-1401 petition falls outside the two-year window required by the statute. He asserts, however, that the concealment by Ward of his false testimony qualifies his petition under the exception for fraudulent concealment. This argument is unavailing. It is clear that McDonald's opponent in this case is the State and not Ward. He has failed to assert facts to demonstrate the State attempted to conceal from him that Ward's trial testimony was false and he has not asserted he employed good faith and reasonable diligence in trying to uncover any fraud on the State's part. For this reason, McDonald's late filing of a section 2-1401 petition may not be excused and the trial court did not err in granting the State's motion to dismiss it.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

SCHMIDT and McDADE, JJ., concur.