Rule 23 order filed
October 18, 2017;
Motion to publish granted
December 12, 2017.

2017 IL App (5th) 140489

NO. 5-14-0489

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 85-CF-618 |
| | ) | |
| GARNELL GENERALLY, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Chapman and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Garnell Generally, appeals the order of the circuit court of Madison County that denied the defendant's request to file a successive postconviction petition. For the following reasons, we affirm.

¶ 2                                    FACTS

¶ 3    The facts necessary to our disposition of this appeal follow. The defendant was convicted of, *inter alia*, murder for his involvement in the 1985 beating death of Harold Wayne Staton. At the time he beat the victim to death, the defendant was 17 years old but already had a history of violent behavior. For his conviction of the offense of murder, the defendant was sentenced to natural life in prison with no possibility of parole. After he exhausted the direct appeal process, the defendant filed multiple postconviction petitions. He was unsuccessful in each of these

1

attempts to challenge both his conviction and his life sentence. In April 2014, he filed a motion to file a successive postconviction petition, claiming his discretionary sentence of natural life in prison with no possibility of parole violated the decision issued by the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012). In a four-page, typewritten order, the circuit court of Madison County denied the defendant's request to file a successive postconviction petition, finding the defendant failed to demonstrate the prejudice needed to qualify to file such a petition because, *inter alia*, his sentence was discretionary rather than mandatory and therefore did not violate *Miller* and because the sentencing judge "carefully considered the sentence in this matter, including the defendant's youth and aspects of his childhood." The court subsequently denied the defendant's motion for reconsideration. This timely appeal followed. Additional facts will be provided as necessary below.

¶ 4                                        ANALYSIS

¶ 5       On appeal, the defendant contends the trial court erred for two reasons: (1) the defendant demonstrated prejudice and (2) the defendant's natural life sentence is unconstitutional. The parties agree that our review of the circuit court's denial of a defendant's request to file a successive postconviction petition is *de novo*. See, *e.g.*, *People v. McDonald*, 405 Ill. App. 3d 131, 135 (2010). Moreover, "[w]hether a statute is unconstitutional is a question of law, which is reviewed *de novo*." *People v. Davis*, 2014 IL 115595, ¶ 26. With regard to the merits of the defendant's appeal, on September 21, 2017, the Illinois Supreme Court issued its decision in *People v. Holman*, 2017 IL 120655. Therein, the court held that a discretionary sentence of life in prison with no possibility of parole that is rendered to a juvenile defendant is not unconstitutional if, at the juvenile defendant's original sentencing hearing, the trial judge, "after considering the defendant's youth and its attendant characteristics," determined "that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable

2

corruption beyond the possibility of rehabilitation." *Id.* ¶¶ 46-47. The *Holman* court explained that the "attendant characteristics" to which it was referring "include, but are not limited to," the factors that follow:

"(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation."

*Id.* ¶ 46 (citing *Miller*, 567 U.S. at 477-78).

¶ 6    The *Holman* court also noted that when a court revisits a juvenile defendant's discretionary life sentence with no possibility of parole, "the only evidence that matters is evidence of the defendant's youth and its attendant characteristics at the time of sentencing," and that the reviewing court "must look at the cold record to determine if the trial court considered such evidence at the defendant's original sentencing hearing." *Id.* ¶ 47. The *Holman* court then analyzed what happened at the defendant's original sentencing hearing in that case, in terms of what information was available to the trial judge and was considered, and in light of the defendant's youth and the attendant characteristics listed above, as well as in relation to the arguments raised on appeal by the defendant. *Id.* ¶¶ 48-50. The *Holman* court concluded that the defendant's sentence passed constitutional muster and that the trial court correctly denied the defendant's motion for leave to file a successive postconviction petition. *Id.* ¶¶ 50, 53.

¶ 7    In this case, we reach the same conclusion for this defendant. The defendant's original sentencing hearing was held on April 4, 1986, before the Honorable P.J. O'Neill. In this appeal,

the defendant argues that Judge O'Neill "attempted to consider [the defendant's] youth as a mitigating factor" but nevertheless violated *Miller* because Judge O'Neill stated that he believed the defendant had "reached the age of reason" by the time he murdered Staton. According to the defendant, Judge O'Neill's statement demonstrates that the defendant "was sentenced at a time [that] predates modern understanding of adolescent brain development and its Eighth Amendment implications." The defendant argues that Judge O'Neill's statement distinguishes this case from *Holman* because in *Holman* no such erroneous finding was made by the trial judge. The defendant also argues that his sentence is unconstitutional under both the United States Constitution and the Illinois Constitution, as applied to him, because the psychological evaluation of him that was presented to Judge O'Neill prior to sentencing contained "no clear evidence that [the defendant] is incorrigible." Therefore, according to the defendant, his sentence "dismisses the reality that he could outgrow his impulsive violent tendencies."

¶ 8    The State responds to each of the defendant's arguments. First, the State aptly notes that at trial, the defendant's brutality toward Staton, a victim chosen at random who begged for mercy as the defendant beat him to death with a tire jack, was manifestly clear and that, at sentencing, two other witnesses testified to separate, unprovoked violent attacks on them by the defendant in the weeks and months preceding Staton's murder. At sentencing, Judge O'Neill also had before him and considered the defendant's presentence investigation, which included the victim impact statement and the aforementioned psychological report. Judge O'Neill also considered the extensive evidence of the defendant's history of violence; his difficult upbringing; attempts to intervene and help the defendant (including via psychiatric treatment); a probation officer's assessment that the defendant's greatest weakness was his failure to learn from his past mistakes; evidence of other paranoid and antisocial traits and tendencies, such as blaming others and shirking his own responsibility for his actions; and the fact that the murder was committed

4

while the defendant was on probation for another offense. Both the State and the defendant presented Judge O'Neill with extensive argument in support of their positions. In particular, counsel for the defendant focused on the defendant's youth, noting his troubled upbringing but stressing the defendant's potential for rehabilitation and asking Judge O'Neill for a sentence of 25 years' imprisonment.

¶ 9    Judge O'Neill noted the factors argued by the parties and stated that he would consider them. He also noted recent United States Supreme Court law that dictated that the defendant's "troubled youth is a matter which this court should consider in mitigation and I do consider that and those factors that you have mentioned." He noted that the murder was committed at a time when the defendant was still quite young—a month shy of his eighteenth birthday—and stated that he had considered the defendant's character and history, both as a very young child and as a teenager. He concluded that the danger the defendant presented to society and the likelihood of the defendant committing other crimes was "so great" that it outweighed "whatever rehabilitative potential" existed within the defendant. He again noted that attempts to rehabilitate or treat the defendant "not only have not met with any success, but [defendant's] reaction to them is such that the court concludes that [defendant has] rejected them." Judge O'Neill added:

> "I think a severe sentence is justified by the record for punitive purposes. I think it is justified for deterrent purposes. And as I have said, the potential for rehabilitation is so limited that the court cannot realistically see any hope for it. I try as a judge, Mr. Generally, to temper justice with mercy. I also in imposing sentence must consider society as well as you, and I have made those considerations and tried to balance them. And it is the finding of this court that a sentence of natural life in the penitentiary is the appropriate sentence."

5

¶ 10    With regard to the defendant's argument that Judge O'Neill's sentence violates *Miller* because Judge O'Neill stated that he believed the defendant had "reached the age of reason" by the time he murdered Staton, the State aptly points out that Judge O'Neill was using a legal term of art—"age of reason"—that widely has been cited in cases spanning half a century as meaning "seven years old" and that accordingly the judge was referring to the period of the defendant's life when he was sexually abused by an acquaintance of his family and was verbally abused and harassed by people at the school he attended until after third grade and was not insinuating that the defendant was fully capable of adult reasoning. We agree, and note that this conclusion is consistent with what Judge O'Neill actually said: "I must also consider your history and character as it pertains to what you have done since attaining the age of reason and through your teenage years." It would make no sense for Judge O'Neill to first mention the age of reason, and then follow that with "and through your teenage years," if he was not referring to the age of reason as a time *before* the defendant's teenage years. It is not reasonable to construe Judge O'Neill's statement as implying that he believed the defendant was fully capable of adult reasoning, particularly when viewed within the context of Judge O'Neill's entire statement at sentencing.

¶ 11    We also agree with the State that Judge O'Neill's statement that "[b]y the age of eighteen, individuals have already formed in some cases indelibly the attitudes and outlook toward life that they will carry with them for the rest of their lives" does not demonstrate that Judge O'Neill violated *Miller* in sentencing the defendant. We stress that Judge O'Neill did not make a blanket statement about youth and adolescent brain development. To the contrary, he stated that *in some cases* individuals have formed such indelible attitudes by the age of 18. Moreover, he did not even state that the defendant was such an individual. In addition, when this passing comment is viewed within the context of Judge O'Neill's extensive pronouncements at

6

sentencing, it cannot reasonably be viewed as prejudicial in any way or as indicative, as the defendant urges, of a misapprehension of the relationship between youth, adolescent brain development, and the eighth amendment.

¶ 12   The State is also correct that at the defendant's original sentencing hearing, Judge O'Neill properly considered the defendant's youth and the attendant characteristics set forward in *Miller* and reiterated in *Holman*. See *Holman*, 2017 IL 120655, ¶ 46 (citing *Miller*, 567 U.S. at 477-78). As explained in detail above, Judge O'Neill explicitly considered the defendant's chronological age at the time of the murder, as well as the assessments made available to him of the defendant's particular immaturity, impetuosity, and failure to appreciate risks and consequences, as well as the defendant's family and home environment, his role as the instigator and lead participant in Staton's murder, any evidence of familial or peer pressures that may have affected him, and his prospects for rehabilitation. With regard to the defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys, after considering the totality of the evidence before him, Judge O'Neill concluded that nothing in the reports in the record indicated that the defendant was mentally ill, and he was "certainly not insane." One of the reports Judge O'Neill considered was the psychological evaluation conducted by Dr. Lawrence Taliana at the request of the defendant. Therein, Dr. Taliana opined that the defendant had "at least high borderline or low average intellectual functioning," and that he showed "some greater potential than the obtained Full Scale IQ of 79 as it relates to the ability to form verbal concepts, more within the average range." Dr. Taliana concluded that the defendant was "able to read simple material and comprehend language at a basic communication level compared to the general public," which "would not reflect an impairment related to competency." One of his ultimate conclusions was that the defendant "is certainly competent in the legal sense."

¶ 13    Finally, the defendant argues that his sentence is unconstitutional under both the United States Constitution and the Illinois Constitution, as applied to him, because the psychological evaluation of him that was presented to Judge O'Neill prior to sentencing contained "no clear evidence that [the defendant] is incorrigible." Therefore, according to the defendant, his sentence "dismisses the reality that he could outgrow his impulsive violent tendencies." However, we agree with the State that, as required by *People v. Bartik*, 94 Ill. App. 3d 696, 702 (1981), in cases in which a defendant raises such an argument, the record in this case shows that Judge O'Neill considered both the seriousness of the crime and the defendant's rehabilitative potential. In fact, as discussed above, Judge O'Neill considered both factors extensively, taking great pains to balance the rights of the defendant with the rights of society and to craft an appropriate sentence. Based upon the information available to him at the time of the defendant's original sentencing hearing, Judge O'Neill did not err in this case.

¶ 14                              CONCLUSION

¶ 15    For the foregoing reasons, we conclude that the defendant did not demonstrate the prejudice necessary to entitle him to file a successive postconviction petition because the defendant's sentence is not unconstitutional pursuant to the test put forward by the Illinois Supreme Court in *Holman*, 2017 IL 120655, nor is it otherwise unconstitutional as applied to him. Accordingly, we affirm the order of the circuit court of Madison County that denied the defendant's request to file a successive postconviction petition.

¶ 16    Affirmed.

2017 IL App (5th) 140489

NO. 5-14-0489

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,　)　Appeal from the
　　　　　　　　　　　　　　　　　　　　　)　Circuit Court of
　　　　Plaintiff-Appellee,　　　　　　　　)　Madison County.
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　No. 85-CF-618
　　　　　　　　　　　　　　　　　　　　　)
GARNELL GENERALLY,　　　　　　　　　　　)　Honorable
　　　　　　　　　　　　　　　　　　　　　)　Neil T. Schroeder,
　　　　Defendant-Appellant.　　　　　　　　)　Judge, presiding.
_____

**Rule 23 Order Filed:**　　　　　October 18, 2017
**Motion to Publish Granted:**　　December 12, 2017
**Opinion Filed:**　　　　　　　December 12, 2017
_____

**Justices:**　　　　Honorable James R. Moore, J.

　　　　　　　　Honorable Melissa A. Chapman, J., and
　　　　　　　　Honorable David K. Overstreet, J.,
　　　　　　　　Concur

_____

**Attorneys**　　Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard,
**for**　　　　Deputy Defender, John M. McCarthy, Assistant Appellate Defender,
**Appellant**　　Fourth Judicial District, 400 West Monroe Street, Suite 303, P.O. Box
　　　　　　　5240, Springfield, IL 62705-5240

_____

**Attorneys**　　Hon. Thomas D. Gibbons, State's Attorney, Madison County Courthouse,
**for**　　　　157 N. Main Street, Suite 402, Edwardsville, IL 62025; Patrick Delfino,
**Appellee**　　Director, David J. Robinson, Acting Deputy Director, Sharon Shanahan,
　　　　　　　Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth
　　　　　　　District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
　　　　　　　Vernon, IL 62864

_____